Reid *v.* Acting Commissioner of the Dept. of Community Affairs.

DUNCAN E. REID & another *vs.* ACTING COMMISSIONER OF
THE DEPARTMENT OF COMMUNITY AFFAIRS & others.

Suffolk.    May 3, 1972. — June 14, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Urban Renewal.    Public Hearing.    State Administrative Procedure
    Act.    Public Board.*

A "public hearing" by the Department of Community Affairs on an
    urban renewal plan under G. L. c. 121B, § 48, although requested as
    provided in § 48, need not be the type of hearing required in an
    adjudicatory proceeding under c. 30A.    [138–145]

PETITION for a writ of mandamus filed in the Superior Court on February 8, 1972.

The case was heard by *Kalus,* J.

*Joel Z. Eigerman* (*Dennis R. Kanin* with him) for the petitioners.

*Walter H. Mayo, III,* Assistant Attorney General (*Danielle E. deBenedictis,* Deputy Assistant Attorney General, with him) for the Acting Commissioner of the Department of Community Affairs.

*Herbert P. Gleason,* Corporation Counsel, for the City of Boston (*James J. Myers & Robert L. Green* for the Boston Redevelopment Authority, with him).

*Lewis H. Weinstein* (*Herbert L. Berman* with him) for the interveners, Boston Urban Associates.

BRAUCHER, J.    The Park Plaza Urban Renewal Project has reached the stage where the Department of Community Affairs (the department) is required to hold a "public hearing" upon the plan therefor (the plan) pursuant to the sixth paragraph of G. L. c. 121B, § 48, as amended through St. 1971, c. 168.    This appeal presents the single question whether the hearing is part of an "adjudicatory proceeding" as defined in G. L. c. 30A, § 1 (1), as amended through St. 1966, c. 497, and subject to the requirements of c. 30A, particularly §§ 10, 11

and 12. The case was heard on a stipulation of agreed facts, which the judge adopted as a report of material facts. The petitioners appeal from an order that judgment be entered declaring that c. 30A does not apply.

On July 15, 1971, the Boston Redevelopment Authority (the authority) approved the plan and voted to submit it to the mayor and city council of Boston. After hearings pursuant to G. L. c. 121B, § 48, the city council approved it on December 6, 1971, and the mayor approved that action on December 22, 1971. On January 13, 1972, the authority submitted the plan to the department. A timely request for a public hearing was made in writing by more than twenty-five taxable inhabitants of Boston, including the petitioners, pursuant to § 48. The petitioners are owners of residence and business premises within the boundaries of the project area set forth in the plan, and the plan calls for acquisition of their properties and demolition of improvements thereon. On January 27, 1972, the petitioners requested that the department conduct the "public hearing" as an "adjudicatory proceeding" and promulgate rules for the conduct of the hearing. By letter dated January 28, 1972, the department refused both requests and stated that the hearing would be held February 9, 1972. Notice of the hearing on that date was published on January 31 and February 1, 1972. Before 1972 the department had held three public hearings on other urban renewal plans. No requests were received to conduct them as "adjudicatory proceedings," and they were not so conducted.

On February 8, 1972, the petitioners filed a petition for a writ of mandamus against the commissioner of the department, seeking a temporary restraining order enjoining the department from holding a hearing on the plan unless conducted as an "adjudicatory proceeding," and a writ of mandamus directing the commissioner to hold hearings on the plan, conduct them as an "adjudicatory proceeding," and adopt suitable rules and regulations. On February 9, 1972, with the assent of the Attorney General on behalf of the department, the judge

ordered that the writ issue substantially as prayed for and that a permanent injunction be entered against the hearing scheduled for that day.   The hearing opened as scheduled but was recessed following service of the order.

On February 11, 1972, by leave of court, the authority, the city of Boston (the city) and two individuals designated together as a "redeveloper" of the project filed petitions to intervene as respondents in the action, praying that the order entered February 9, 1972, be vacated and that the court hear argument why the public hearing should be considered a "legislative" type hearing and not an "adjudicatory proceeding."   The petitions were allowed and the order vacated on February 14, 1972. Answers were thereafter filed by the respondents, and the intervening respondents included in their answers prayers for a declaratory judgment under G. L. c. 231A, § 6, that the proposed "public hearing" is not an "adjudicatory proceeding."   After hearing, a second judge on March 8, 1972, issued "findings, rulings and order for judgment" granting the interveners' prayer.   The petitioners promptly claimed an appeal.   Stays pending appeal were denied first by the trial judge and then by a single justice of this court, and we are informed that the department held hearings on the plan, not conducted as an adjudicatory proceeding, on April 11, 12 and 13, 1972.

An "adjudicatory proceeding" according to G. L. c. 30A, § 1 (1), "means a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing."   It is common ground that the department in the present circumstances is required by G. L. c. 121B, § 48, to conduct an "agency hearing" before approving or disapproving the plan. There is dispute, however, whether the rights of "specifically named persons" are to be determined, and whether the determination is required to be made "after opportunity for an agency hearing."

Section 48 contemplates a decision by the department approving or disapproving the plan within sixty days after the plan is submitted to it. The critical provision is as follows: "The department may hold a public hearing upon any urban renewal plan submitted to it, and shall do so if requested in writing within ten days after submission of the plan by the urban renewal agency, the mayor or city council of the city . . . in which the proposed project is located, or twenty-five or more taxable inhabitants of such city . . . ." The department is not to approve a plan unless it makes eight findings: (1) that the plan "is based upon a local survey," (2) that it "conforms to a comprehensive plan for the locality as a whole," (3) that without government action "the project area would not by private enterprise alone . . . be made available for urban renewal," (4) that the plan "will afford maximum opportunity to privately financed urban renewal," (5) that "the financial plan is sound," (6) that "the project area is a decadent, substandard or blighted open area," (7) that the plan is "sufficiently complete," and (8) that the relocation plan has been approved under c. 79A.[1]

Before the department has approved a plan the urban renewal agency may proceed to obtain control of property in the project area, "but it shall not, without the approval of the department, unconditionally obligate itself to purchase or otherwise acquire any such property except as provided in section forty-seven." Section 47 permits the urban renewal agency to acquire land in an area for which it is preparing an urban renewal plan upon a determination, "after a public hearing of which the land owners of record have been notified by registered mail," that the area is "a decadent, substandard or blighted open area"; "any person aggrieved by such determination" may seek review by writ of certiorari "to correct errors of law in such determination, which shall

---

[1] In the trial court the petitioners contended that G. L. c. 79A, § 5, provides for an "adjudicatory proceeding." The judge ruled against them. The point has not been argued to us, and we do not consider it.

be the exclusive remedy for such purpose." [2]    After the plan has been approved by the department and notice of the approval has been given to the urban renewal agency, § 48 provides that the agency "may proceed at once to acquire real estate within the location of the project, either by eminent domain . . . or otherwise."

The Attorney General argues that the decision of the department is a determination that there is a public necessity to take private property for a public use, and that the Fifth and Fourteenth Amendments to the Constitution of the United States require a trial type hearing for such a determination, citing *Winnisimmet Co.* v. *Grueby,* 209 Mass. 1, 2.    That case dealt only with the interpretation of a statute authorizing a taking. "The necessity for appropriating property for public use is not a judicial or quasi judicial question but is a legislative one.    This statement is true irrespective of whether the determination is by the Legislature or by public officers to whom the Legislature has delegated the power. As such a decision is purely political, a hearing is not essential to due process" under either the State or the Federal Constitution.    *Hayeck* v. *Metropolitan Dist. Commn.* 335 Mass. 372, 375, and cases cited.    *Moskow* v. *Boston Redevelopment Authy.* 349 Mass. 553, 570, cert. den. 382 U. S. 983.    *Carlisle* v. *Department of Pub. Util.* 353 Mass. 722, 724, and cases cited.    Compare *First Natl. Bank* v. *Board of Bank Incorporation,* 361 Mass. 381, 382–383, and cases cited.

The petitioners assert that the rights, duties and privileges of four classes of "specifically named persons" are to be determined here: the city, the authority and its designated redeveloper, the twenty-five or more taxable inhabitants who requested the hearing, including the petitioners, and the owners and tenants in the project

---

[2] The trial judge ruled that § 47 provides the exclusive remedy for the present petitioners. The respondents concede that that ruling was erroneous, and assert that it was unnecessary to the decision. We agree that § 47 applies only where the agency seeks to acquire land before the plan is approved by the department, a situation not presented in the present case.

area, including the petitioners. If any one of these classes fits the definition, the argument continues, the petitioners need not be members of the class in order to demand compliance with the statutory provisions governing an "adjudicatory proceeding." *Newton* v. *Department of Pub. Util.* 339 Mass. 535, 542–544. *Bay State Harness Horse Racing & Breeding Assn. Inc.* v. *State Racing Commn.* 342 Mass. 694, 701–703.

The city and the authority are "persons" under G. L. c. 30A, § 1 (4). *Natick* v. *Massachusetts Dept. of Pub. Welfare,* 341 Mass. 618, 619. They are "specifically named" in the plan. The city, through the mayor or city council, has a right to request a hearing under § 48, and in a sense the "rights, duties or privileges" of the city and the authority are determined by the decision of the department. But the rights, duties and privileges in question are those of a public agency acting in its public capacity in proposing a broad social program. Whatever might be the situation if the city asserted rights as a creditor or property owner, we do not think a proceeding becomes "adjudicatory" merely because it may affect the public, political or legislative functions of the city. Compare *Worcester* v. *Commonwealth,* 345 Mass. 99, 100. The authority is in a similar position. No argument is made that the designated redeveloper has any greater right than the authority.

The "twenty-five or more taxable inhabitants" of the city who have a right to request a hearing under § 48 are "specifically named" only by their participation in the request. Their "rights, duties or privileges" are determined only in the sense that all taxpayers of the city have an interest in its financial affairs. They need not be residents of the project area or owners or tenants of property within the area. Owners of property in the area are apparently excluded if they are corporations or reside outside the city. G. L. c. 4, § 7, Fourteenth. *Cabot* v. *Assessors of Boston,* 335 Mass. 53, 56, n. 1, and cases cited. Taxpayers' suits are a classic form of the public action to vindicate public interests rather than private

rights.   See Jaffe, Judicial Control of Administrative
Action, 483–486.   The grant of a right to taxpayers to
request a hearing on a public issue does not necessarily
make the proceeding "adjudicatory."

The private rights most clearly affected by proceed-
ings under § 48 are those of owners and tenants of land
in the project area.   The effect of the decision of the de-
partment may be to determine that their premises will
be taken for public use.   But compare *McAuliffe & Burke
Co.* v. *Boston Housing Authy.* 334 Mass. 28, 31–32, and
cases cited; *Cayon* v. *Chicopee,* 360 Mass. 606, 612.   Un-
der § 47, where land is to be taken before the plan is
approved, "the land owners of record" must be notified
of the public hearing by registered mail and may well be
"specifically named persons," but their exclusive rem-
edy "to correct errors of law" is by writ of certiorari.
In contrast, § 48 makes no provision for land owners as
such.   We assume without deciding that they are "specif-
ically named persons," and that their "legal rights" may
in a sense be "determined" by the decision of the depart-
ment.   But the statute does not require that they be
given an "opportunity for an agency hearing" before
that determination.   We do not think the nature of the
proceeding is changed because some of the taxpayers
who have a right to request a hearing are also owners of
land in the project area.

Thus the text of the critical sentence of § 48 indicates
that the proceeding is not "adjudicatory."   That indica-
tion is reinforced by the list of required findings in § 48.
Each of those findings relates either to the character of
the project area or to the nature of the plan.   Findings
are not required with respect to such "adjudicative facts"
as "the facts about the parties and their activities, busi-
nesses, and properties," as "who did what, where, when,
how, why, with what motive or intent," or as "the kind
of facts that go to a jury in a jury case."   See Davis, Ad-
ministrative Law Treatise, § 7.02; *Milligan* v. *Board of
Registration in Pharmacy,* 348 Mass. 491, 495–496.   The
department is not limited to the required findings, and

doubtless could disapprove the plan on the basis of individual hardship or like considerations involving adjudicative facts. But the required findings strongly suggest that the appropriate type of hearing is "legislative" rather than "adjudicatory."

The legislative history of § 48 is not to the contrary. Before 1969, a public hearing before the predecessor to the department was required for land assembly and redevelopment projects, with findings substantially identical to those now required under § 48. Former G. L. c. 121, § 26KK, as amended through St. 1960, c. 776, § 6. *Bowker* v. *Worcester*, 334 Mass. 422, 432. We have held that such findings may not be reviewed by us like adjudicative findings. *Stockus* v. *Boston Housing Authy.* 304 Mass. 507, 509–511. *Papadinis* v. *Somerville*, 331 Mass. 627, 630. *Despatchers' Cafe Inc.* v. *Somerville Housing Authy.* 332 Mass. 259, 261–262. *Bowker* v. *Worcester, supra,* at 434. *Worcester Knitting Realty Co.* v. *Worcester Housing Authy.* 335 Mass. 19, 22. *Moskow* v. *Boston Redevelopment Authy.* 349 Mass. 553, 561, cert. den. 382 U. S. 983. A commentator familiar with the Massachusetts statutes wrote in 1957, "It may be expected . . . that hearing statutes will be construed to call for legislative rather than adjudicative type proceedings." Sullivan, Administrative Procedure and the Advocatory Process in Urban Redevelopment, 45 Cal. L. Rev. 134, 144. See *Moskow* v. *Boston Redevelopment Authy. supra,* at 565. The statute governing urban renewal projects, unlike the statute governing land assembly and redevelopment projects, provided for a legislative hearing before the city council; it did not provide for any hearing before the predecessor to the department. Former G. L. c. 121, § 26ZZ, as amended through St. 1968, cc. 142, 153. *Moskow* v. *Boston Redevelopment Authy. supra,* at 569. See Sullivan, *supra,* at 148–149.

Statute 1969, c. 751, repealed former §§ 26KK and 26ZZ of c. 121 and substituted § 48 in the new c. 121B. Section 48 requires both the hearing before the city council previously required by § 26ZZ and the hearing before

a State department previously required by § 26KK. It shows no intention to change the character of either hearing. "Changes involving matters of substance and policy" were kept to a minimum and specifically identified. "The common standards of the predecessor sections (§ 26KK and § 26ZZ) are substantially followed." See 1969 Senate Bill No. 1226, Governor's Message and Notes on Changes from Existing Law, pp. 1, 102–103. So far as appears, no hearing on any urban renewal plan has ever been conducted as an adjudicatory proceeding.

Our State Administrative Procedure Act, G. L. c. 30A, has the same broad remedial purpose to provide comprehensively for procedural due process in administrative proceedings as the comparable Federal statute and the many State statutes following the pattern of the Revised Model State Administrative Procedure Act promulgated in 1961 by the Commissioners on Uniform State Laws. See *Milligan* v. *Board of Registration in Pharmacy,* 348 Mass. 491, 500; Cooper, State Administrative Law, 119–127; Curran and Sacks, The Massachusetts Administrative Procedure Act, 37 B. U. L. Rev. 70, 84–87. We do not construe it narrowly. Unless an opportunity for an agency hearing is required by constitutional right or by statute we are not authorized to require the agency to comply with the formal procedural requirements prescribed for adjudicatory proceedings. Not every public hearing is required to be so conducted. But nothing we say here is intended to limit the power of the department to conduct hearings as adversary proceedings, particularly where genuine issues are presented which are suitable for trial in the format of a contested case. Compare *Miller* v. *Alcoholic Beverages Control Commn.* 340 Mass. 33, 34.

The urban renewal project which is the subject of this case is of course part of a mammoth Federal-State program responding to a set of major national problems. See McGee, Urban Renewal in the Crucible of Judicial Review, 56 Va. L. Rev. 826. Decisions in other courts are generally in harmony with our conclusion that the

proceeding before the department is not an adjudicatory proceeding. *Gart* v. *Cole*, 263 F. 2d 244, 251 (2d Cir.), cert. den. 359 U. S. 978. *Powelton Civic Home Owners Assn.* v. *Department of Housing & Urban Dev.* 284 F. Supp. 809, 829–830 (E. D. Pa.). *Ross* v. *Chicago Land Clearance Commn.* 413 Ill. 377, 380. *State* v. *Land Clearance for Dev. Authy. of Kansas City*, 364 Mo. 974, 994–995. See *Green Street Assn.* v. *Daley*, 373 F. 2d 2d 1, 7 (7th Cir.), cert. den. 387 U. S. 932; *Hahn* v. *Gottlieb*, 430 F. 2d 1243, 1246–1249 (1st Cir.); *Bay Natl. Bank & Trust Co.* v. *Dickinson*, 229 So. 2d 302 (Dist. Ct. App. Fla.); *Ashwaubenon* v. *State Hy. Commn.* 17 Wis. 2d 120, 127–128. In so far as *Jeffersonville Redevelopment Commn.* v. *Jeffersonville*, 248 Ind. 468, is to the contrary, we do not follow it.

*Order affirmed.*