TOWN OF WARREN & others[1] vs. HAZARDOUS WASTE
FACILITY SITE SAFETY COUNCIL & others.[2]

Worcester. November 8, 1983. — May 30, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Hazardous Waste. Administrative Law,* Judicial review, Adjudicatory pro-
ceeding, Regulations. *Municipal Corporations,* Home rule, Hazardous
waste facility. *Due Process of Law,* Vagueness of statute. *Constitutional
Law,* Delegation of powers.

A determination by the Hazardous Waste Facility Site Safety Council pur-
suant to G. L. c. 21D, § 7, that a proposed hazardous waste facility is
"feasible and deserving of state assistance" is not subject to judicial
review under G. L. c. 30A, § 14. [115-117]

General Laws c. 249, § 4, providing for a civil action in the nature of
certiorari, does not authorize judicial review of a determination by the
Hazardous Waste Facility Site Safety Council pursuant to G. L. c. 21D,
§ 7, respecting the feasibility of a proposed hazardous waste facility.
[117]

The provisions of G. L. c. 214, § 7A, for equitable and injunctive relief in
cases where damage to the environment is occurring or is about to occur
do not authorize judicial review of a decision by the Hazardous Waste
Facility Site Safety Council pursuant to G. L. c. 21D, § 7, respecting
the feasibility of a proposed hazardous waste facility. [118]

The Hazardous Waste Facility Site Safety Council was not required by G. L.
c. 210, § 4, to promulgate regulations before making a determination
respecting the feasibility of a proposed hazardous waste facility. [119]

---

[1] Ursula S. Wright, William N. Wright, Jr., David E. Butler, William
E. Marsh, Michael J. Hebert, John Orszulak, Joan Prokop, Richard J.
Grabowski, Joanna M. Lanterman, Linda M. Smith, Robert A. Buck,
Clifford R. Marriott, Kathleen T. Griffin, Jean H. McGann, Roland J.
Demers, George Ferraro, Charles McKinney, Cathy Rossi, Neva I. Kauf-
man, Nancy Beaudry, and James McLaren, interveners.

[2] Department of Environmental Management and I T Corporation.
A brief was filed by amici curiae, New England Legal Foundation,
Associated Industries of Massachusetts, Inc., The New England Council,
Inc., Wyman-Gordon Company, John L. Abbott, Bonita T. Goodstein, and
Kevin J. Donahue.

Certain by-laws of a town which would have the effect of excluding a
proposed hazardous waste facility from the town were inconsistent with
G. L. c. 40A, § 9, and thus were unenforceable to exclude the proposed
facility, despite the town's claim that, because the town did not expressly
permit industrial use in any part of the town, there was no area in the
town "zoned for industrial use" within the meaning of § 9, where the
town did not expressly prohibit industrial use of land and there was, in
fact, industry in the town. [120-122]

General Laws c. 40A, § 9, providing that if certain conditions are met a
developer proposing a hazardous waste facility has an absolute right to
construct and operate the facility on the specified site did not constitute
an unconstitutional delegation of legislative power to the developer or
to the Hazardous Waste Facility Site Safety Council. [122-124]

CIVIL ACTION commenced in the Superior Court Department
on January 8, 1982.

The case was heard by *O'Neil,* J., on motions for summary
judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*William W. Hays* (*Nancy Jakimedes* with him) for the town
of Warren.

*Gregor I. McGregor* (*John F. Shea* with him) for the inter-
veners.

*JoAnn Shotwell,* Assistant Attorney General, for Hazardous
Waste Facility Site Safety Council & another.

*Allan van Gestel* (*Christopher P. Davis* with him) for I T
Corporation.

*Joseph D. Alviani & Marcia Drake Seeler,* for New England
Legal Foundation & others, amici curiae, submitted a brief.

O'CONNOR, J. In these appeals by the town of Warren and
numerous citizen interveners, we consider the constitutionality
of St. 1980, c. 508, "An Act further regulating the disposal
of hazardous waste materials," and the enforceability of town
by-laws that would exclude certain hazardous waste facilities
from the town. Also, we consider whether the Superior Court
had jurisdiction to review determinations by the defendant Hazard-
ous Waste Facility Site Safety Council (council) that a proposal
to locate a hazardous waste facility in the town was "feasible
and deserving of state assistance," see G. L. c. 21D, § 7, and
whether the council was required to promulgate rules and regu-

lations before making those determinations. We conclude that St. 1980, c. 508, is constitutional, that the by-laws are unenforceable to exclude from the town the facility proposed by the defendant I T Corporation, that the Superior Court did not have jurisdiction to review the council's "feasible and deserving of state assistance" determination, and that the council was not required to promulgate rules and regulations.

In 1979 the Legislature established a special commission to "investigate alternative procedures to be utilized by the authorities in granting local and state approval of sites for hazardous waste facilities," and to propose appropriate legislation. St. 1979, c. 704, § 4. Draft legislation was submitted by the commission and on July 15, 1980, the Legislature enacted St. 1980, c. 508. The statute's preamble recited that the Legislature's purpose was "to immediately encourage and expedite the process of development of hazardous waste treatment and disposal facilities which provide adequate safeguards to protect the public health, safety, and environment of the commonwealth."

To achieve that purpose, St. 1980, c. 508, § 8, inserted in the General Laws of the Commonwealth the Massachusetts Hazardous Waste Facility Siting Act (Siting Act), codified as G. L. c. 21D. The Siting Act created the council, which monitors and implements the siting process. G. L. c. 21D, § 4.

A developer proposing to construct, maintain, and operate a hazardous waste facility initiates the siting process by submitting a notice of intent to the council and to various other State agencies. The notice may, but need not, propose specific sites. If specific sites are proposed, the notice must be submitted to the communities in which those sites are located. The notice must include, among other items, information about the hazardous wastes that would be treated, the procedures to be used, and any proposed sites. Also, the notice must include preliminary specifications and architectural drawings of the proposed facility. Following the receipt of a completed notice of intent, the council has fifteen days to determine whether the proposal is "feasible and deserving of state assistance." G. L. c. 21D, § 7. If the developer has not proposed specific sites, or has done

so but is willing to accept alternatives, the council solicits suggestions of sites from various described persons. If more than three sites are suggested, the council reduces the potential sites to three, including the developer's suggested site, if any. G. L. c. 21D, § 9.

Within thirty days after receiving either a notice of intent naming a potential site within its borders or, in the case of a site named during the site suggestion period, notice that a site within its borders is on the final list of suggested sites, each community in which such a site is located, referred to in the statute as a "host" community, is required to establish a local assessment committee. The local assessment committee is made up of representatives of the host city or town and may also include representatives of abutting communities. G. L. c. 21D, § 5.

The developer must then submit to the council and to the Secretary of the Executive Office of Environmental Affairs a preliminary project impact report for each site under consideration. The report shall consist of (1) the environmental impact report required by G. L. c. 30, §§ 62-62H, to be reviewed by the Secretary, and (2) a social and economic appendix, to be reviewed by the council. G. L. c. 21D, § 10. The special commission that drafted the Siting Act expressed the hope that the preliminary report would provide the basis for negotiation of a siting agreement between the developer and the host community. 1980 House Doc. No. 6756, at 22.

No facility cán be constructed unless a siting agreement has been established by the developer and the host community. G. L. c. 21D, § 12. The siting agreement results from negotiations between the local assessment committee and the developer and specifies the terms and conditions under which the facility will be constructed and operated. G. L. c. 21D, §§ 12 and 13. The agreement is a "nonassignable contract binding upon the developer and the host community, and enforceable against the parties in any court of competent jurisdiction." G. L. c. 21D, § 12. A local assessment committee may request technical assistance grants from the council to pay costs incurred in the siting process. G. L. c. 21D, § 11.

Sixty days after the determination by the council and the Secretary that the preliminary project report is in compliance with the law, if an impasse in negotiations exists, the council may require the local assessment committee and the developer to submit the issues in dispute to final and binding arbitration. Such arbitration is to be conducted in accordance with the provisions of G. L. c. 251, including the provisions for judicial review of an arbitration decision. G. L. c. 21D, § 15.

Upon the establishment of a siting agreement, the developer must prepare a final project impact report which incorporates the provisions of the siting agreement. If the Secretary and the council find that the final project impact report is in compliance with all applicable provisions of law, the council may then declare that the siting agreement is operative and is to be given full force and effect. G. L. c. 21D, § 10. The siting agreement is the final goal of the Siting Act, G. L. c. 21D, which, as we have said, was inserted in the General Laws by St. 1980, c. 508, § 8. It was designed, at least in part, to mitigate local resistance to the siting of hazardous waste facilities. 1980 House Doc. No. 6756, at 13.

Other sections of St. 1980, c. 508, have a similar purpose. For instance, § 2A of St. 1980, c. 508, amended G. L. c. 21C, § 7, to provide that the Department of Environmental Quality Engineering "shall grant a license to construct, maintain and operate a [hazardous waste] facility on a site if it determines that said construction, maintenance, and operation does not constitute a significant danger to public health, public safety, or the environment, does not seriously threaten injury to the inhabitants of the area or damage to their property, and does not result in the creation of noisome or unwholesome odors." That determination is subject to judicial review. G. L. c. 21C, § 11. General Laws c. 111, § 150B, was inserted by § 4 of St. 1980, c. 508, to provide that no hazardous waste facility may be operated unless the local board of health has determined that its operation will impose "no significantly greater danger to the public health or public safety from fire, explosion, pollution, discharge of hazardous substances, or other construction or operational factors than the dangers that currently exist in the

conduct and operation of other industrial and commercial enterprises in the commonwealth not engaged in the treatment, processing or disposal of hazardous waste, but utilizing processes that are comparable." Any person aggrieved by the board of health action may appeal its decision to the Superior Court.

The Legislature's desire to decrease local resistance to hazardous waste facilities was accompanied by a determination not to permit towns and cities to exclude such facilities from within their borders altogether. Statute 1980, c. 508, § 5, amended G. L. c. 40A, § 9, to provide that a hazardous waste facility "shall be permitted to be constructed as of right on any locus presently zoned for industrial use" if the required licenses, permits, and siting agreement are present. Furthermore, following the submission of a notice of intent "a city or town may not adopt any zoning change which would exclude the facility from the locus specified in said notice of intent." G. L. c. 40A, § 9, as amended through St. 1980, c. 508, § 5. This preclusion of zoning changes is similar in effect to a provision in the Siting Act relating to licenses and permits: "No license or permit granted by a city or town shall be required for a hazardous waste facility which was not required on or before the effective date of this chapter by said city or town." G. L. c. 21D, § 16. In short, the Legislature sought, by means of St. 1980, c. 508, to facilitate the siting of safe facilities for the disposal and treatment of the wastes generated by schools, hospitals, government, and industry in Massachusetts by denying municipalities the right to veto facilities outright. In return, however, the Legislature established a means of involving affected municipalities in the siting process at the earliest possible moment, making available to them the legal, technical, and financial resources necessary for effective participation in that process, and allowing them significant control over the siting of a facility.

On July 15, 1981, I T Corporation filed a notice of intent to construct, maintain, and operate a hazardous waste facility in Massachusetts, pursuant to G. L. c. 21D, § 7. The notice named no specific site. On August 17, 1981, the council determined that the proposal was "feasible and deserving of state

assistance." The council subsequently solicited suggestions for possible sites. I T Corporation suggested several sites, but on November 25, it withdrew all of them except for two sites in the town. On December 11, 1981, the council determined that the proposals for these two sites were "feasible and deserving of state assistance."[3] The town established a local assessment committee which applied for and received technical assistance grants from the council. On January 4, 1982, the town requested an "adjudicatory hearing" before the council and the defendant Department of Environmental Management to review the council's "feasible and deserving of state assistance" determination. No such hearing was granted.

On January 8, 1982, the town commenced the present action seeking a declaration that St. 1980, c. 508, was unconstitutional, and an order setting aside the council's "feasible and deserving of state assistance" determination. I T Corporation counterclaimed, seeking a declaration that a 1972 town by-law and two by-laws adopted on November 21, 1981, all of which arguably would prevent the construction of the facility proposed by I T Corporation, are invalid. The 1972 by-law states that "[n]o refuse, garbage or rubbish from outside the limits of the Town of Warren shall be deposited in any area of the Town." Town of Warren By-Laws, art. IX, § 12 (b). The first of the challenged by-laws adopted on November 21, 1981, appears to provide that no hazardous waste facility will be permitted in the town except to store, treat, or dispose of wastes generated within the town, and then only by special permit. Town of Warren By-Laws, art. X, § 8.[4] The second by-law provides that

---

[3] While the Siting Act does not expressly address this situation, the council correctly concluded that it was obliged to consider whether I T Corporation's proposal as applied to specific sites was "feasible and deserving of state assistance." This interpretation of the Siting Act has been incorporated in the council's regulations. See 990 Code Mass. Regs. 7:04(3)(c) (1982).

[4] The amendment provides as follows: "No hazardous waste storage, treatment, or disposal facility, as defined in Chapter 21D of the General Laws of Massachusetts shall be permitted within the Town of Warren, with the exception of those wastes generated within the Town, which may be stored, treated or disposed of by special permit of a Safety Board to be established by the Board of Selectmen."

no hazardous waste facility shall be located on or within five hundred feet of certain natural features of the land relating to water resources. Town of Warren By-Laws, art. X, § 9.[5]

In February, 1982, several citizens of the town and nearby communities intervened as plaintiffs. As did the town, the interveners sought a declaration that St. 1980, c. 508, is unconstitutional, and an order setting aside the council's feasibility determination. The interveners also sought a declaration as to the validity of the 1981 by-laws and they requested injunctive relief pursuant to G. L. c. 214, § 7A. General Laws c. 214, § 7A, authorizes the Superior Court in certain circumstances to restrain persons from unlawfully damaging the environment.

All the parties moved for summary judgment. After a hearing, judgment was entered dismissing the interveners' complaint because of lack of jurisdiction, and also dismissing the town's complaint, because of lack of jurisdiction, in so far as it sought judicial review of the council's feasibility determinations. The judgment also declared that St. 1980, c. 508, is constitutional, that G. L. c. 21D "does not require that the Council grant an adjudicatory hearing to a city or town before rendering a 'feasible and deserving decision,'" and that the council was not required to adopt "final rules and regulations" before its decision was made. The judgment further declared that the town's by-laws adopted in 1981 are invalid and unenforceable and that the town's 1972 by-law "does not apply to the siting of a hazardous waste facility . . . because the by-law is inconsistent with the provisions of G. L. c. 21D and G. L. c. 40A, § 9."

On appeal the town makes the following contentions: (1) The by-laws in question are not inconsistent with St. 1980,

_____

[5] The amendment provides as follows: "No hazardous waste facility as defined in Mass. General Laws, Chapter 21D, shall be located on land subject to flooding, or on any bank, beach, dune, flat, marsh, meadow, swamp, or fresh water wetland, or within 500 feet of said land or resource. Land subject to flooding shall mean land inundated by the 100 year flood elevation whether by rise in surface water or ground water. No such facility shall be located on a site underlaid by stratified drift aquafers [sic] which are being used for public water supply or have a reasonable potential for such use in the future."

c. 508, and therefore they are valid. (2) Statute 1980, c. 508, delegates legislative power to private parties and to the council and therefore violates the Constitutions of the United States and the Commonwealth. (3) The council was required by G. L. c. 30A to afford to the town an adversarial evidentiary hearing in accordance with the procedural requirements of that statute, but failed to do so and therefore the feasibility determinations should be set aside. (4) The council was required to promulgate rules and regulations before making a feasibility determination but it did not do so, and for that reason, also, the feasibility determinations should be vacated. (5) The Superior Court had jurisdiction under G. L. c. 30A to conduct a review of the council's feasibility determinations and therefore the judge was in error in failing to do so.

In their appeal the plaintiff interveners support those contentions of the town. Appropriately, they do not appear to contend that under G. L. c. 30A, § 14, they individually have rights to judicial review of the council's feasibility determinations in addition to the alleged right of the town. They simply support the town's contention that G. L. c. 30A, § 14, affords the town such a right. The interveners do argue, however, that they are entitled in their own right to judicial review of the feasibility determinations under G. L. c. 249, § 4, and G. L. c. 214, § 7A.

We begin with a consideration of the plaintiffs' contentions that the council's feasibility determinations are subject to judicial review. First, we confront the argument that G. L. c. 30A, § 14, provides the town with a right of judicial review. General Laws c. 30A, § 14, entitles an aggrieved party to judicial review of a "final decision of any agency in an adjudicatory proceeding." Since the council is authorized by G. L. c. 21D, § 4 (13), to make regulations, it is an "agency." G. L. c. 30A, § 1 (2). However, even if the council's feasibility determination is considered to be a "final decision" within the meaning of G. L. c. 30A, § 14, despite the fact that that determination was only one early step in a lengthy siting process, the town nevertheless is not entitled to judicial review unless the decision was made in an "adjudicatory proceeding."

An adjudicatory proceeding is defined by G. L. c. 30A, § 1 (1), as amended through St. 1979, c. 795, § 3, as "a proceeding before an agency in which the legal rights, duties or privileges of specifically named persons are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing." We must inquire, therefore, whether the town is a specifically named person whose legal rights, duties or privileges have been determined by the council in circumstances that constitutionally or statutorily require an opportunity for a hearing. Since the town does not contend that either G. L. c. 21D or any other statute required such a hearing, the question whether the council's feasibility determination was made in an adjudicatory proceeding depends on whether the town had a constitutional right to an adversary hearing. We conclude that it did not have such a right.

The town says that under the Home Rule Amendment, art. 89, amending art. 2 of the Amendments to the Constitution of the Commonwealth, the town and its citizens have a right to "self-government in local matters" and that the council's feasibility determinations have the effect of infringing on that right by forcing the town to negotiate a siting agreement, to go to binding arbitration if negotiations fail, and ultimately to receive within its borders a type of facility which the town has voted to exclude. The town's position is that an agency determination that adversely affects such an interest of the town cannot be made constitutionally without first affording the town an opportunity to be heard. The town cites no helpful authority in support of its position and we have found none. Rather, it appears that in 1972 this court rejected a similar contention in *Reid* v. *Acting Comm'r of the Dep't of Community Affairs,* 362 Mass. 136 (1972), and we think that case controls here.

*Reid* presented the question whether the public hearing that the Department of Community Affairs was required by G. L. c. 121B, § 48, to hold in conjunction with the department's responsibility to approve or disapprove an urban renewal plan, was part of an "adjudicatory proceeding," which would require that the hearing be conducted in compliance with the procedures mandated by G. L. c. 30A, §§ 10, 11, and 12. The department

contended that it need conduct only a legislative type hearing. We held that the city of Boston was a "specifically named person" within G. L. c. 30A, § 1 (1), but that because the rights, duties, and privileges affected by the Department's decision were those of a public agency acting in its public capacity, the proceedings were not adjudicatory. We said that "[w]hatever might be the situation if the city asserted rights as a creditor or property owner, we do not think a proceeding becomes 'adjudicatory' merely because it may affect the public, political or legislative functions of the city." *Id.* at 141. There is no significant distinction between that case and the present one. The only rights, duties, or privileges of the town that were affected by the feasibility determination here related to public, political, or legislative functions of the town. Therefore, the council's determinations, as they affected the town, were not made in an adjudicatory proceeding, and they are not subject to judicial review under G. L. c. 30A, § 14.

We disagree with the interveners' contention that the Superior Court had jurisdiction under G. L. c. 249, § 4, which provides for a civil action in the nature of certiorari, to review the feasibility determinations. "[T]he requisite elements for availability of certiorari are (1) a judicial or quasi-judicial proceeding; (2) a lack of all other reasonably adequate remedies; and (3) a substantial injury or injustice arising from the proceeding under review." *Boston Edison Co.* v. *Selectmen of Concord,* 355 Mass. 79, 83 (1968). Decisions to appropriate property for public use and approving urban renewal plans are not judicial or quasi-judicial but are political in nature. *Reid* v. *Acting Comm'r of the Dep't of Community Affairs, supra* at 140-143. *Moskow* v. *Boston Redevelopment Auth.,* 349 Mass. 553, 570 (1965), cert. denied, 382 U.S. 983 (1966). *Hayeck* v. *Metropolitan Dist. Comm'n,* 335 Mass. 372, 375 (1957). Like those decisions, the feasibility determinations of the council and the proceedings by which they were made were neither judicial nor quasi-judicial. Therefore, a civil action in the nature of certiorari under G. L. c. 249, § 4, was not available for reviewing the feasibility determinations.

General Laws c. 214, § 7A, as amended by St. 1981, c. 643, provides that "[t]he superior court for the county in which damage to the environment is occurring or is about to occur may, upon a civil action in which equitable or declaratory relief is sought in which not less than ten persons domiciled within the commonwealth are joined as plaintiffs, or upon such an action by any political subdivision of the commonwealth, determine whether such damage is occurring or is about to occur" and may grant injunctive relief against "the person causing or about to cause such damage." The interveners argue that the Superior Court had jurisdiction under that statute to review the council's feasibility determinations because of the harm which is "caused or about to be caused" by those determinations. It is clear that the Legislature did not intend by G. L. c. 214, § 7A, to authorize injunctive relief against an agency of the Commonwealth that was created by the Legislature to monitor and implement the process for siting hazardous waste facilities. In any event, the judge had authority to grant relief only if he found that damage to the environment was either occurring or was "about to occur." He did not make that finding and there was nothing before him which required him to do so. The feasibility determination, an early step in the siting process, did not demonstrate that damage to the environment was about to take place. The interveners' argument that the feasibility determinations may have caused socio-economic harm to the community has no merit. Such harm may be a relevant factor under the National Environmental Policy Act, 42 U.S.C. § 4332 (2)(c) (1976), which refers to actions affecting the "quality of the human environment," but it is not relevant to G. L. c. 214, § 7A, which defines "damage to the environment" as "destruction, damage or impairment, actual or probable, to any of the *natural resources* of the commonwealth" (emphasis supplied).

We conclude that the council's feasibility determinations are not subject to judicial review. Because those determinations are not subject to judicial review, we do not consider the argument that the town was entitled to a hearing in accordance with the procedures provided in G. L. c. 30A, §§ 10 and 11.

The plaintiffs also argue that the council's feasibility determinations should be vacated because they were made in the absence of formally promulgated rules and regulations, contrary to the requirements of G. L. c. 21D, § 4, and of constitutional guarantees of due process. We are satisfied that rules and regulations were not required. General Laws c. 21D, § 4, states that one of the council's "powers and duties shall be: . . . (13) to adopt such rules, regulations, procedures and standards as may be necessary for carrying out its powers and performing its duties pursuant to the provisions of this chapter." That language is permissive only. It does not declare that regulations are necessary, but only authorizes the council to promulgate whatever rules and regulations the council may deem necessary to the fulfilment of its statutory duties. Compare *Tedford* v. *Massachusetts Hous. Fin. Agency,* 390 Mass. 688, 695 n.9 (1984) (the language "pursuant to such regulations as [the agency] shall make and publish from time to time" is "clearly permissive rather than mandatory"). Similarly, the references in G. L. c. 21D, §§ 4 (5), 7 (7), and 10, to regulations, rules, standards, procedures, or criteria are merely references to such regulations, rules, standards, procedures, or criteria as the council in its discretion may adopt pursuant to § 4 (13).

The plaintiffs' argument that, regardless of any statutory directive, the council was required to issue regulations before making its determinations is without merit. The interests of the plaintiff interveners are not distinct from those of the town. Their claims, like those of the town, were brought to vindicate the public interest. *Reid* v. *Acting Comm'r of the Dep't of Community Affairs, supra* at 141-142. As we have seen, the only rights, duties, or privileges that were affected by the feasibility determinations related to public, political or legislative functions of the town. Therefore, due process considerations are not relevant. Nor is it necessary to have regulations "to improve the quality of judicial review," *Environmental Defense Fund, Inc.* v. *Ruckelshaus,* 439 F.2d 584, 598 (D.C. Cir. 1971), because, as previously noted, judicial review of the feasibility determination is not appropriate.

We proceed to a discussion of whether, as claimed by the plaintiffs, the town's by-laws, adopted in 1972 and in November, 1981, were valid exercises of local governmental powers guaranteed to the town by the Home Rule Amendment, art. 89, amending art. 2 of the Amendments to the Constitution of the Commonwealth.

Section 6 of the Home Rule Amendment provides that "[a]ny city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, *which is not inconsistent with the constitution or laws enacted by the general court* in conformity with powers reserved to the general court by section eight" (emphasis supplied). Our question is whether the challenged by-laws are inconsistent with G. L. c. 40A, § 9, as amended through St. 1980, c. 508, § 5. General Laws c. 40A, § 9, states that hazardous waste facilities "shall be permitted to be constructed as of right on any locus presently zoned for industrial use pursuant to the ordinances and by-laws of any city or town provided that all permits and licenses required by law have been issued to the developer and a siting agreement has been established pursuant to sections twelve and thirteen of chapter twenty-one D, provided however, that following the submission of a notice of intent, pursuant to section seven of chapter twenty-one D, a city or town may not adopt any zoning change which would exclude the facility from the locus specified in said notice of intent. This section shall not prevent any city or town from adopting a zoning change relative to the proposed locus for the facility following the final disapproval and exhaustion of appeals for permits and licenses required by law and by chapter twenty-one D." By virtue of that statute, when a notice of intent proposing a specific site has been filed, or when the council has reduced the number of potential sites to three in accordance with G. L. c. 21D, § 9, if those sites are at that time in an area "zoned for industrial use," the developer has an absolute right, which cannot be defeated by the town, to construct, maintain, and operate a hazardous waste facility thereon. This assumes that a siting agreement has been established and that all the permits

and licenses required by law have been obtained. General Laws c. 40A, § 9, contemplates a facility that is not limited to treatment or disposal of hazardous wastes generated within a single town. "To hold otherwise would impute to the Legislature an intent to Balkanize the Commonwealth and to permit any single municipality to deny access to such vital services to any and all other municipalities. We do not impute such an intent." *Pereira* v. *New England LNG Co.,* 364 Mass. 109, 121 (1973).

The town's 1972 by-law provides that "[n]o refuse, garbage or rubbish from outside the limits of the Town of Warren shall be deposited in any area of the Town." Town of Warren By-Laws, art. IX, § 12 (b). For the purpose of this case only, we assume that hazardous waste is "refuse, garbage or rubbish" within the meaning of that by-law. Given that assumption, art. IX, § 12 (b), would exclude from the town the type of facility contemplated by G. L. c. 40A, § 9. It would exclude the facility proposed here. Town of Warren By-Laws, art. X, § 8, adopted in November, 1981, appears to provide that no hazardous waste facility will be permitted in the town except to store, treat, or dispose of wastes generated in the town, and then only by special permit.[6] That by-law also would exclude from the town the type of facility contemplated by G. L. c. 40A, § 9, and it would exclude the proposed facility.

The by-laws are inconsistent with G. L. c. 40A, § 9, if that statute grants a developer in the circumstances of I T Corporation a right to build and operate in the town a hazardous waste facility with the right to store, treat, and dispose of hazardous wastes generated outside the town as well as within it. Whether G. L. c. 40A, § 9, grants a developer the right to build and operate a facility in the town in the circumstances of this case depends on whether the chosen sites were "zoned for industrial use" when the sites were chosen after the notice of intent had been filed.

There are no by-laws by which the town is divided into zones for the purpose of confining similar types of land use to specified areas. There are no industrial or other zones as such.

---

[6] See note 4, *supra.*

Industry exists in the town. It is neither prohibited, nor is it expressly permitted, in any area of the town. The plaintiffs would have us conclude, therefore, that the proposed sites are not located in areas "zoned for industrial use" within the meaning of G. L. c. 40A, § 9. We are not moved to that conclusion, however. Such a limited construction of that phrase would not promote the Legislature's intent, as expressed in the preamble to St. 1980, c. 508, "to immediately encourage and expedite the process of development of hazardous waste treatment and disposal facilities." Instead, we adopt a construction which we think better promotes the Legislature's objective. We construe the words "zoned for industrial use" as referring to land on which industrial uses are permitted, because they are not prohibited, by the town's by-laws. We hold, therefore, that the town's by-law, art. X, § 8, which would exclude from the town any hazardous waste facility that would store, treat, or dispose of wastes generated outside the town, is inconsistent with G. L. c. 40A, § 9, and is, therefore, unenforceable. Article X, § 9, which would exclude any hazardous waste facility within 500 feet of certain natural features of the land relating to water resources, also is unenforceable. The 1972 by-law, art. IX, § 12 (b), is unenforceable to the extent that it would prohibit I T Corporation's proposed facility.

We turn to the plaintiffs' final contentions, which are that St. 1980, c. 508, impermissibly delegates legislative power to private parties and also to the council in violation of art. 30 of the Declaration of Rights and Pt. II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth. They argue that St. 1980, c. 508, § 5, codified at G. L. c. 40A, § 9, allows a developer to legislate by "freezing" a municipality's zoning power by filing a notice of intent.

We have concluded that I T Corporation has an absolute right, pursuant to G. L. c. 40A, § 9, to construct and operate a facility on one of the specified sites if a siting agreement is established and if the necessary permits and licenses are obtained. Our conclusion is based on our holding that the sites were "zoned for industrial use" within the meaning of G. L. c. 40A, § 9, when the notice of intent was filed and the sites

were specified. The plaintiffs argue that I T Corporation's filing of its notice of intent, therefore, was in effect a legislative mandate by I T Corporation that from the time the notice was filed until the proposal shall finally have been disapproved, if that should occur, the town may not exercise its zoning power.

The filing of the notice of intent and the site specification had the effect of establishing the right of I T Corporation to build and operate the proposed facility if the other statutory requirements are met. Except in that limited way, the town's zoning powers have not been affected. To the extent that the town's powers have been affected by reason of the action of I T Corporation, that is the result of a determination by the Legislature that the siting procedure be initiated by the developer's act. Unlike the fixing of retail prices by manufacturers as permitted by § 14B of the Fair Trade Law, G. L. c. 93, §§ 14A-14D, which we held in *Corning Glass Works* v. *Ann & Hope, Inc.,* 363 Mass. 409 (1973), to be an unlawful delegation of legislative powers to private parties, here I T Corporation did not exercise legislative powers, but only performed a ministerial act.

We also conclude that St. 1980, c. 508, § 8, does not unconstitutionally delegate legislative power to the council. The plaintiffs contend that the council has improperly been delegated legislative power because the Legislature failed to enact adequate standards to guide the council in arriving at its feasibility determination. In effect, according to the argument, by making an unguided determination that a proposal for a hazardous waste facility is feasible and deserving of State assistance, the council may arbitrarily force the town to establish a committee to negotiate a siting agreement and to accept binding arbitration contrary to the town's constitutional right of self-government. The plaintiffs' argument that the Legislature has not provided sufficient standards to guide the council is combined with an attack on the statute as being void for vagueness. "These constitutional claims of 'void for vagueness' and unlawful delegation of legislative authority are closely related. The principal question posed by both claims is whether the statute is so vague 'that men of common intelligence must necessarily

guess at its meaning and differ as to its application.' *Commonwealth* v. *Carpenter,* 325 Mass. 519, 521 [1950]. *O'Connell* v. *Brockton Bd. of Appeals,* 344 Mass. 208, 212 [1962]." *Board of Appeals of Hanover* v. *Housing Appeals Comm.,* 363 Mass. 339, 363 (1973). See *LaPointe* v. *License Bd. of Worcester,* 389 Mass. 454, 460-461 (1983). We do not think that St. 1980, c. 508, § 8, is so vague that reasonable persons would have to guess at its meaning.

Although the statute does not expressly provide standards to guide the council's feasibility determination, those standards may nevertheless be found in the statute's "necessary implications. The purpose, to a substantial degree, sets the standards. A detailed specification of standards is not required. The Legislature may delegate to a board or officer the working out of the details of a policy adopted by the Legislature." *Massachusetts Bay Transp. Auth.* v. *Boston Safe Deposit & Trust Co.,* 348 Mass. 538, 544 (1965). General Laws c. 21D, § 7, provides that the notice of intent shall include a description of the type of waste to be processed and of the procedures the developer proposes to use, as well as a description of any proposed site and of measures to be taken to make it suitable, or of the requirements of a suitable site if a specific site is not proposed. The notice of intent must include preliminary specifications and architectural drawings for the proposed facility, as well as a copy of the most recently published Statewide environmental impact report issued by the Department of Environmental Management. It is apparent from the nature of the information that is required to be included in the notice of intent filed with the council, and from the clear purpose of the statute, what considerations should guide the council in making its determination of feasibility and worthiness of State assistance. By making that determination the council does not make laws but rather implements the policies of the Legislature. See *Commonwealth* v. *Diaz,* 326 Mass. 525, 527 (1950).

We affirm the judgment entered in the Superior Court dismissing the town's and the interveners' claims for judicial review of the council's determinations. We also affirm the judgment in

so far as it declares that (1) G. L. c. 21D does not require that the council grant an "adjudicatory hearing" to a city or town before rendering a "feasible and deserving" decision, (2) the council was not required to adopt final rules and regulations before making its decisions "concerning its notices of intent," (3) St. 1980, c. 508, is constitutional, and (4) the town's by-laws, art. X, §§ 8 and 9 (described in the judgment as arts. 7 and 9), are invalid and unenforceable. We vacate that part of the judgment pertaining to the town by-law, art. IX, § 12(b), adopted in 1972, and order that this case be remanded to the Superior Court for the entry of a judgment declaring that the by-law is invalid and unenforceable in so far as it prohibits the construction and operation of the hazardous waste facility proposed by I T Corporation or limits the facility to the storage, treatment, or disposal of wastes generated in the town.

*So ordered.*