CUMBERLAND FARMS, INC. *vs.* MONTAGUE ECONOMIC
DEVELOPMENT AND INDUSTRIAL CORPORATION.

No. 94-P-342.

Franklin. March 7, 1995. - June 2, 1995.

Present: KASS, JACOBS, & GREENBERG, JJ.

*Eminent Domain*, Validity of taking. *Economic Development and Indus-trial Corporation. Notice*, Timeliness. *Limitations, Statute of.*

A municipal economic development and industrial corporation organized
   pursuant to G. L. c. 121C, § 3, complied with the notice requirements
   for the hearing required by G. L. c. 121C, § 6, with respect to a certain
   proposed economic development project. [618-619]
The owner of land that was subject to taking under an economic develop-
   ment plan demonstrated no injury from alleged defects in the detail and
   completeness of the plan as proposed and adopted pursuant to G. L.
   c. 121C, § 6. [619-620]
A civil action contesting the preliminary planning process that led to the
   taking of land by a municipal economic development and industrial cor-
   poration pursuant to the provisions of G. L. c. 121C, could not be main-
   tained seven years after the development plan had been approved by the
   municipality and more than one year after the taking actually occurred.
   [620-623]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 15, 1991.

The case was heard by *Francis X. Spina*, J., on motions
for summary judgment.

*W. Mark Russo* for the plaintiff.

*Debra L. Purrington* for the defendant.

KASS, J. By an action brought November 15, 1991, Cum-
berland Farms, Inc. (Cumberland), seeks to challenge a plan
for an "economic development project" formulated under
G. L. c. 121C and approved by the town meeting of Monta-
gue on December 6, 1984. A judge of the Superior Court
dismissed the action as untimely, but Cumberland argues

that as its land (the locus) was not actually taken until September 21, 1990, the provisions of G. L. c. 79, § 16, as amended by St. 1982, c. 248, § 1, afforded it three years, i.e., until September 20, 1993, to challenge the legality of the underpinnings of the taking.

A person whose land has been taken by eminent domain does, indeed, have three years from the time that the right to damages has vested to contest the lawfulness of a taking under G. L. c. 79,[1] the chapter in the general laws which deals with eminent domain. See G. L. c. 79, §§ 16 and 18; *Boyce* v. *Greater Lowell Regional Vocational Tech. Sch. Dist.*, 7 Mass. App. Ct. 639, 644-645 (1979). The avenues of challenge may not, however, include attacks on the underlying planning process that may have led to authorization of the taking and the order of taking. If that process is to be contested as so flawed as to be unlawful, the challenge must be made within the time limitations applicable to review in the nature of certiorari. On the basis of the materials put before him by the parties, each of whom moved for summary judgment, the judge rightly ordered judgment for the defendant Montague Economic Development and Industrial Corporation (MEDIC).

Some statutory background and chronological history is necessary to set the stage for discussion of the case. Under G. L. c. 121C, § 3, a Massachusetts municipality may organize an economic development and industrial corporation to formulate an economic development plan, define economic development areas, and undertake economic development projects. See the definition of those terms in G. L. c. 121C, § 1. MEDIC is such a corporation, having been established by the town of Montague in 1980. By St. 1983, c. 723, § 34, the Legislature appropriated $22,000,000 to be used by the Department of Environmental Management for the creation

---

[1]See, e.g., *Raimondo* v. *Burlington*, 366 Mass. 450, 450-451 (1974), which acknowledged the right of a landowner contemporaneously to carry on an action to have a taking declared void and another action under G. L. c. 79 to assess damages; *Whitehouse* v. *Sherborn*, 11 Mass. App. Ct. 668, 675 (1981), discussing application of the limitations period in c. 79 to challenges to the validity of a taking.

of urban heritage State parks in designated places, including the Turners Falls district of Montague. MEDIC prepared an economic development plan for a Turners Falls Heritage Park and, through local newspaper advertisements and posting, published notice of a required-by-statute public hearing on the plan to be held December 6, 1984. Later that evening, the town meeting voted unanimously to approve the Turners Falls Heritage Park plan. On July 25, 1985, the town meeting passed an article authorizing MEDIC to take Cumberland's property.[2] Representatives of Cumberland attended that 1985 town meeting and raised no voice in opposition.

From February 5, 1985, to June, 1989, MEDIC offered relocation assistance to Cumberland through the Franklin County Community Development Corporation. Simultaneously, MEDIC engaged in negotiations with Cumberland to buy its land. While that was going on, Cumberland objected neither to the heritage park plan, generally, nor the inclusion of the locus in the project area, specifically. Some time after June, 1989, Cumberland broke off discussions with MEDIC. On September 21, 1990, MEDIC issued its order of taking of the locus and recorded that taking with the Franklin registry of deeds on the same day, conformably with G. L. c. 79, § 3, which requires that recording be done within thirty days. MEDIC sent notice of the taking to Cumberland on October 15, 1990. Cumberland declined to vacate the locus, and, on February 21, 1992, MEDIC, acting under G. L. c. 79, § 3, served Cumberland with a notice of surrender.

Cumberland's complaint asserted jurisdiction under G. L. c. 231A, the declaratory judgment statute. Primarily, what Cumberland seemed to want was a declaration that MEDIC failed to adhere sufficiently to the prescriptions of G. L. c. 121C, § 6, and that any taking under the economic development plan was, therefore, invalid. The complaint included requests for injunctive relief and damages that flowed from interference with Cumberland's property rights.

[2]At the early stages of planning, the record owner of the locus was V.S.R. Realty, Inc. On September 19, 1984, that corporation was merged into Cumberland Farms, Inc.

In cases which have challenged the validity of a taking, the attack has been either that the taking was for an invalid purpose, i.e., not a public one, *Benevolent & Protective Order of Elks, Lodge No. 65* v. *Planning Bd. of Lawrence*, 403 Mass. 531 (1988), or that the taking authority had failed to comply with the procedural requirements of G. L. c. 79. *Radway* v. *Selectmen of Dennis*, 266 Mass. 329, 333-334 (1929). For other examples of the first category, improper purpose, see also *McAuliffe & Burke Co.* v. *Boston Hous. Authy.*, 334 Mass. 28, 30-31 (1956); *Bowker* v. *Worcester*, 334 Mass. 422 (1956); *Worcester Knitting Realty Co.* v. *Worcester Hous. Authy.*, 335 Mass. 19 (1956). For other examples of the second category, failure to follow c. 79 procedure, see *Watertown* v. *Dana*, 255 Mass. 67, 71 (1926) (failure to record taking within statutory period). Compare *Suburban Land Co.* v. *Billerica*, 314 Mass. 184, 193 (1943) (statutory taking process complied with).

Creation of parks for the refreshment and education of the public is so recognizable a public purpose that Cumberland makes no effort to question the legitimacy of the purpose for which its land has been taken. Rather, the challenge falls into two categories: *first*, that it did not receive notice of the public hearings on the economic development plan; and *second*, that the plan itself is faulty in detail.

1. *Notice*. As to the first objection, we have already observed that MEDIC gave notice to the public at large by newspaper publication and posting of the December 6, 1984, public hearing. Cumberland could, under G. L. c. 121C, § 6, have made written request that it receive notice of the public hearing on the Turners Falls Heritage Park plan, but it did not do so. In drawing the statute, the Legislature appears to have assumed that the local discussion and planning leading up to the required hearing would draw in persons affected and alert them sufficiently so they could, if they so desired, request notification of the date, time, and place of the hearing. Section 6 of G. L. c. 121C also calls for mandatory hearing notice to State agencies, legislators representing the area in which the project is located, and community groups

concerned with that area. There is no suggestion in the record of failure to attend to those notice requirements. The judge correctly determined that MEDIC had complied with statutory notice requirements and that Cumberland had received all the notice of the December 6, 1984, hearing to which it was entitled. Parenthetically, Cumberland had representatives present at the town meeting of July 25, 1985, when the project had become sufficiently advanced that the town passed a vote authorizing a taking of Cumberland's property. Cumberland registered no objection to the plan on that occasion.

2. *Nature of challenge to the validity of the economic development plan.* General Laws c. 121C, § 1(5), provides that an economic development plan

> "shall be sufficiently complete to indicate the boundaries of the area, such land acquisition, such demolition, removal, and rehabilitation of structures, and such development, redevelopment and general public improvements as may be proposed to be carried out within such area, zoning and planning changes, if any, and proposed land uses, maximum densities and building requirements."

Although the plan as approved on December 6, 1984, described reuse purposes contemplated in the heritage park and had a map attached showing the project area and parcels in it, Cumberland complains that the plan was insufficiently precise in delineating the boundaries of the project, the parcels to be acquired, and the proposed land uses. Cumberland cites as additional defects in the plan that it did not spell out a comprehensive relocation plan, was not accompanied by a report from the planning agency of the municipality, and was not accompanied by a statement of the method of financing, all as required by G. L. c. 121C, § 6.

None of the subjects to which Cumberland adverts was entirely ignored in the economic development plan approved by the town on December 6, 1984, and by its terms, the plan was to be further worked out. We need not measure whether

the detail in the plan is sufficient to constitute compliance with the statutory requirements because Cumberland's challenge fails for two reasons.

*First*, there is no showing that Cumberland was caused to change position to its detriment, hindered, or in any other respect adversely affected by the alleged defects in the plan. Cumberland knew perfectly well by the time of the town meeting on July 25, 1985, that its land was in the project area and was to be acquired; it was offered relocation assistance and carried on discussions on that subject with MEDIC's relocation contractor for better than four years; and it dickered with MEDIC over a protracted period about selling the locus to MEDIC. The public purpose of the project, as noted, has not been placed in question. Cumberland has not shown any injury within the area of concern of the plan elements which it asserts have been inadequately worked out; it may, therefore, not claim relief for such planning defects, were they shown to exist. See *Massachusetts Assn. of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977); *Benevolent & Protective Order of Elks, Lodge No. 65* v. *Planning Bd. of Lawrence*, 403 Mass. at 545.

*Second*, Cumberland may not, after the fact of the taking, attack the preliminary planning steps that led to the final action. Cf. *Dodge* v. *Prudential Ins. Co.*, 343 Mass. 375, 381 (1961). After a taking has occurred, as we have said, the permissible areas of challenge are the purpose of the taking and compliance with the process prescribed by G. L. c. 79. This is not to say that governmental benchmarks on the way to an eminent domain taking, such as the approval of the economic development plan in this case, are immune from review. Their lawfulness may be tested by, as here, a complaint for declaratory judgment, a complaint for injunctive relief, or a complaint in the nature of certiorari. See, e.g., *Bowker* v. *Worcester*, 334 Mass. 422 (urban renewal land assembly and redevelopment plan); *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. 296, 300 (1985), and cases cited (time dur-

ing which alcoholic beverages could be served). Compare *Walpole* v. *Secretary of the Executive Office of Envtl. Affairs*, 405 Mass. 67, 72 (1989) (no administrative action of judicial or quasi judicial action yet taken and review in the nature of certiorari was, therefore, premature). Although in some of the cases cited above the complaint was styled as a bill in equity or complaint for declaratory judgment, it is the nature of the criticism of the governmental action, not the label of the complaint, that determines the method and scope of review. *Boston Edison Co.* v. *Boston Redev. Authy.*, 374 Mass. 37, 49 (1977). *Newbury Jr. College* v. *Brookline*, 19 Mass. App. Ct. 197, 201-202 (1985). *Yerardi's Moody St. Restaurant & Lounge, Inc.* v. *Selectmen of Randolph*, 19 Mass. App. Ct. at 300.

Generally, review in the nature of certiorari lies from a judicial or quasi judicial proceeding, *Warren* v. *Hazardous Waste Facility Site Safety Council*, 392 Mass. 107, 117 (1984), and is not available to challenge what are legislative or political decisions. *Ibid.* See *Reid* v. *Acting Commr. of the Dept. of Community Affairs*, 362 Mass. 136, 138-145 (1972), which decided that a hearing required in connection with an urban renewal plan, formulated under G. L. c. 121B, was not an adjudicatory proceeding, in part because the findings to be made were legislative in nature, i.e., they were to be made to shape a municipal policy rather than to determine the rights of persons. See also *Moskow* v. *Boston Redev. Authy.*, 349 Mass. 553, 570-571 (1965), cert. denied, 382 U.S. 983 (1966). The distinction can be elusive, and cases and statutes recognize this. So, for example, the remedy for "widening, straightening, relocating or locating anew a road" is certiorari. *Denman* v. *County of Barnstable*, 346 Mass. 412, 413 (1963), cert. denied, 377 U.S. 948 (1964). Owners of record of real property determined under G. L. c. 121B, § 47, to be decadent, substandard, or blighted open area, may, by the terms of the statute, test that determination by certiorari. See *Reid* v. *Acting Commr. of the Dept. of Community Affairs*, 362 Mass. at 142. The same right adheres by statute to a person desiring to challenge a redevel-

opment plan formulated under G. L. c. 121A. See St. 1960, c. 652, § 13; *Boston Edison Co.* v. *Boston Redev. Authy.*, 374 Mass. at 43.

Chapter 121C contains no direction about judicial review. A person whose land will be taken under a plan, in terms of that person's concerns and rights, much resembles those allowed to mount challenges under G. L. c. 121B, § 47, under St. 1960, c. 652, § 13, or in connection with the layout of a road. Whether review in this instance is styled as declaratory judgment or certiorari, the inquiry in either case is whether, on the record, the quasi public action taken is in accordance with statutory command. The pertinent questions are what is the scope of review and what is the limitations period. In terms of the more public nature of c. 121C projects compared with c. 121A projects, a plan formulated under G. L. c. 121C more resembled ones arrived at under c. 121B. As a publicly initiated plan, it is tested by asking whether the approval of the plan was arrived at in an arbitrary and capricious manner. As to what is an appropriate limitations period for bringing an action to review the action of a governmental body, that which is provided for in G. L. c. 249, § 4, is a useful guide. At the time MEDIC and the town acted in approving the economic development plan, the limitations period was two years after the challenged proceeding. By St. 1986, c. 95, not applicable to this case, that period was reduced to sixty days.

The case at hand illustrates the desirability of reviewing a programmatic decision, such as approval of an economic development plan, within a period that allows reasonably contemporaneous review rather than waiting until tangible action has been taken on the basis of that decision. Had Cumberland put its questions about the plan to a legal test within the certiorari limitations period, and had it been able to establish that serious defects in the plan in fact existed, MEDIC and the town would have had an opportunity to abandon or adjust the plan. Seven years after the decision to approve the plan, much public action has occurred. Money has been earmarked and spent. MEDIC, the town, and the

Department of Environmental Management have entered (on September, 1985) into a "Memorandum of Understanding and Agreement," on the strength of which all three participants have expended resources, and MEDIC has entered into contractual arrangements and has taken land by eminent domain. The statutory reduction to sixty days of the time in which a party may initiate certiorari review reflects a legislative determination that challenges to governmental proceedings be sufficiently prompt so that neither the public body nor private parties working with it are in significantly changed positions when the attack on the underlying proceedings is made.

*Judgment affirmed.*