Connolly, J.
The plaintiffs, Edward and Rosemary Fitzpatrick (the "Fitzpatricks”), commenced this action seeking to enjoin the Town of Cohasset: Michael Sullivan, Jane Goedecke, Merle Brown, Martha Gjetseby and Peter Pratt, Selectmen of the Town of Cohasset; and Harold Lichfield, Highway Surveyor of the Town of Cohasset (collectively “defendants”); from blocking, obstructing, or otherwise interfering with the Fitzpatricks’ right to access their property, located at 60-68 Pleasant Street in Cohasset, from James Lane, a public way. The plaintiffs also sought a binding determination of the parties’ rights in this matter from this court. After trial, without jury, and based upon all the credible evidence, this court makes the following findings of fact and rulings of law.
FINDINGS OF FACT
Edward and Rosemary Fitzpatrick own a residential parcel of land located at 60-68 Pleasant Street in Cohasset, Massachusetts. The Fitzpatricks reside in an apartment of the two-family home built in the parcel and they presently rent the other to their son, Ian Fitzpatrick. There are two possible ways that the Fitzpatricks can use to access their property. The first is through the main driveway located on Pleasant Street. The other is through a secondary driveway located directly off Eleazar’s Lane. This secondary driveway can be reached by traveling along James Lane, a public way.
In 1925, James Lane became a public way pursuant to an Order of Taking by the Town of Cohasset. Prior to the taking, James Lane was a private way known as Eleazer’s Lane. Through the 1925 taking, the Town of Cohasset took all of Eleazer’s Lane by eminent domain except for a small portion presently lying westerly of James Lane. That portion, triangular in shape and consisting of approximately 107 square feet, has remained Eleazer’s Lane.
On September 24, 1993, some concerned residents living along James Lane signed a petition requesting that the Board of Selectmen of the Town of Cohasset install a nonmoveable, permanent barrier at the legal southern end of James Lane to ensure the Lane’s “No Through Way” and Dead End status. The residents’ requestwas prompted by safety concerns forthe 10-14 children that lived in the eight houses located on James Lane. The families were concerned that the Fitzpatricks’ then tenant, Matthew Fitzpatrick, and some people residing with him, were operating their vehicles along James Lane recklessly or at excessive speeds.
In January 1995, Matthew Fitzpatrick bought a Landscaping Business for which he obtained certain business equipment. The business equipment consisted of a one-ton F350 Ford truck, a landscaping type trailer, and a Toyota pick-up. The residents became increasingly concerned because Matthew was operating these vehicles at excessive speeds thereby further endangering the children.
On November 20, 1995, in response to the citizens’ complaints, the Cohasset Board of Selectmen held a public hearing to discuss the possibility of erecting a barrier at the juncture of James Lane and Eleazer’s Lane to prevent motor vehicles from traveling on James Lane. This proposal by the Board was an attempt to address the citizens’ safety concerns as well as to stop the increase in the flow of traffic along James Lane. The increase in traffic was caused by connecting Eleazer’s Lane to the Fitzpatricks’ driveway for its use as a throughway connecting Cushing Road to Pleasant Street.
On November 16, 1995, Gregory Doyon, Executive Secretary of the Board, sent the Fitzpatricks a letter notifying them of the hearing. Mr. Doyon informed the Fitzpatricks that the Selectmen’s meeting would be held on Monday, November 20, 1995, at 8:45 p.m. at the Town Hall. The Fitzpatricks were invited to attend. At the hearing, the Board of Selectmen voted to erect the barrier due to the serious safety concerns. To this end, they instructed the Town’s Highway Surveyor to place a row of boulders at the juncture of Eleazer’s Lane and James Lane thereby blocking any motor vehicle traffic on James Lane.
On January 2, 1996, the Fitzpatricks appeared in court to challenge the defendants’ actions in blocking their access to James Lane. That same day, this court granted the plaintiffs a preliminary injunction ordering the defendants to remove all boulders interfering with the Fitzpatricks’ right to use James Lane and prohibiting the defendants from obstructing or otherwise interfering with the Fitzpatricks’ right to access *67 James Lane. On March 5, 1996, upon further hearing, the preliminary injunction was renewed.
On or about December 13, 1996, the defendants moved to dissolve the preliminary injunction issued on January 3, 1996 and renewed on March 5, 1996. The defendants’ motion to dissolve was denied on December 16, 1996 (Donovan, J.).
On March 19, 1998, the Board of Selectmen held a public hearing regarding the taking and discontinuance of Eleazer Lane. The Fitzpatricks, as well as all other interested parties, were served with a “Notice of Public Hearing and View” informing them of the hearing. The purpose of the hearing was to view the premises, hear the parties, and to act on a proposal to discontinue Eleazer Lane and to take all easement and passageway rights by eminent domain pursuant to G.L.c. 82 and G.L.c. 79.
Earlier that day, in an attempt to prevent the taking and discontinuance of Eleazer’s Lane, the plaintiffs filed a “Complaint for Contempt and Emergency Motion for a Restraining Order” in Norfolk Superior Court. The plaintiffs asserted that the Board of Selectmen’s actions in taking and discontinuing Eleazer’s Lane violated the existing preliminary injunction. The plaintiffs argued that the Board of Selectmen’s acts were a deliberate attempt to obstruct or interfere with their right of access to James Lane. After a hearing, the court (Doerfer, J.) denied the plaintiffs’ motion for a restraining order but pointed out that “ [although serious questions have been raised as to whether the contemplated taking is for a legitimate public purpose, plaintiffs will have an opportunity for judicial review and possible preliminary injunctive relief if a taking is made. G.L.c. 79, §§16, 18. Cumberland Farms, Inc. v. Montague Economic Development & Industrial Corp., 38 Mass.App.Ct. 615, 616 (1995). Plaintiffs may have a right to review the action taken at the meeting by filing a complaint for certiorari. Id.”
At the Town Meeting, where the plaintiffs were represented by counsel, the Board of Selectmen unanimously voted to “discontinue Eleazer Lane as a private way effective on approval by Town Meeting, and to take all easement and passageway rights, if any, over said way, in the interest of public safely and planning, by order to be adopted at a regular meeting of the Board of Selectmen, subject to and following authorization by Town Meeting.”
On March 28, 1998, at the Annual Town Meeting held at the Cohasset High School Sullivan Gymnasium, the Town voted to adopt the Board of Selectmen’s motion to take and discontinue Eleazer’s Lane. On April 13, 1998, the Town of Cohasset issued an Order of Taking and a Discontinuation Order for Eleazer’s Lane. Eleazer's Lane was identified as, “(t]he land consisting of 107 square feet, more or less, shown as Parcel A on a plan entitled ‘Eminent Domain Taking Plan in Cohasset, Massachusetts, March 9, 1998,’ by Ross Engineering Company, Inc., 683 Main Street, Norwell, MA 02061, which is recorded herewith.” The Order stated that the purpose of the taking was to discontinue the private way known as Eleazer’s Lane. To this end, the Town took all easement rights and any other rights of passage over Eleazer’s Lane by eminent domain.
Following the taking and discontinuance of Eleazer’s Lane, the Fitzpatricks filed an emergency motion to amend their complaint to add counts challenging the legality of the Board of Selectmen’s actions. On May 29, 1998, the court (Chernoff, J.) allowed the Fitzpatricks’ motion to amend. The court also ordered the parties to discuss short-term safety measures which could perhaps be addressed by amending the January 2, 1996 preliminary injunction.
On August 24, 1998, the defendants filed a proposed modification to the January 2,1996 preliminary injunction. The court (Chernoff, J.) denied the modification believing that it, in effect, invalidated the preliminary injunction because it changed free access to James Lane into no access at all. On that date, the court once again ordered the parties to discuss the matter and to seek a short-term solution such as no vehicle access over certain periods of the day. The court also ordered that the matter be set for a jury-waived trial within the following 90 days.
The parties did not reach an agreement and this court held a jury-waived bifurcated trial on January 14, 24 and 25, 1999. The first part of the trial consisted of a petition for certiorari under G.L.c. 249, §4, to determine whether the taking of Eleazer’s Lane by the Town of Cohasset was for a proper purpose under G.L.c. 79. After reviewing all the pertinent evidence and documentation presented to the court as well as hearing arguments from counsel, this court finds that the taking of Eleazer’s Lane was valid and for a proper public purpose under G.L.c. 79. Specifically, this court finds that the public purpose of the taking and discontinuance of Eleazer’s Lane was to address the serious public safely issues affecting the residents of James Lane.
The second part of the trial consisted of a determination of the Fitzpatricks’ proprietary rights in Eleazer’s Lane prior to the taking and discontinuance by the Board of Selectmen. This was necessary to determine what damages, if any, the Fitzpatricks were entitled to under G.L.c. 79, §12. At trial, the Fitzpatricks argued that they held Eleazer’s Lane in fee simple. The defendants, on the other hand, argued that the Fitzpatricks’ neighbors, the Hillmans, owned the fee. This court heard testimony from expert witnesses, attorneys Michael Haney and Edward Casey, both land court examiners who performed title examinations of the Fitzpatrick and Hillman parcels. After careful consideration of the evidence presented by both experts, this court finds that a reading of the deeds of each properiy mandates the conclusion that *68 the Hillmans owned Eleazer’s Lane in fee simple at the time of the taking and discontinuance by the Town of Cohasset.
On January 25, 1999, after a full trial and upon consideration of all the evidence there presented, this court vacated the preliminary injunction issued on January 2, 1996, believing that the plaintiffs had little or no chance of prevailing on the merits of this case.
RULINGS OF LAW VALIDITY OF TAKING
The proper avenue to challenge the planning process that leads to the authorization for a taking or an order of taking by eminent domain is a review in the nature of certiorari under G.L.c. 249, §4. See Cumberland Farms, Inc. v. Montague Economic Development & Industrial Corp., 38 Mass.App.Ct. 615, 616 (1995). Cases which challenge the validity of a taking focus on whether the taking was for a valid or public purpose, and on whether the taking authority complied with the procedural requirements of G.L.c. 79. See id. at 618.
At trial, the Fitzpatricks challenged the validity of the Board of Selectmen’s taking of Eleazer’s Lane arguing that the taking was not for a valid public purpose. ‘The taking of private property for a public purpose by eminent domain is an inherent attribute of sovereign power.” Burnes v. Metropolitan Dist. Commn., 325 Mass. 731, 734 (1950). However, “[a] prerequisite for any taking is the constitutional requirement that the taking be made for a public purpose.” St. Botolph Citizens Committee, Inc. v. Boston Redevelopment Authority, 429 Mass. 1, 12 & fn. 12 (1999); see also Benevolent & Protective Order of Elks, Lodge No. 65 v. Planning Bd. of Lawrence, 403 Mass. 531, 539 (1988). Judicial review of the Board of Selectmen’s action in taking Eleazer’s Lane is limited to whether the taking was made for a legitimate public purpose and whether the deprived landowner received just compensation for the taking. See Mugar v. Massachusetts Bay Transportation Authority, 28 Mass.App.Ct. 443, 446 (1990).
Black’s Law Dictionary defines public purpose as “[t]he constitutional requirement that the purpose of any . . . particular exertion of the power of eminent domain shall be the convenience, safety, or welfare of the entire community and not the welfare of a specific individual or class of persons.” In the Order ofTaking, the Board of Selectmen stated that the purpose of the taking of the private way known as Eleazer’s Lane was to discontinue its use due to common convenience and necessity. Specifically, the public safety concerns brought about by the increase in traffic on James Lane which endangered the residents living along the way, among them 10-14 children. This court finds that the taking of Eleazer’s Lane for the safety of the residents of James Lane was a proper public purpose.
The Fitzpatricks also argued that the Board of Selectmen acted in bad faith when they took Eleazer’s Lane because the taking benefitted some residents of James Lane while disadvantaging them. It is well established that the exercise of the power of eminent domain may be successfully challenged where it is used solely to benefit private persons. See Pheasant Ridge Associates Limited Partnership v. Burlington 399 Mass. 771, 774 (1987). Under such circumstances, the motive behind a taking would be considered to be in bad faith and would render the taking invalid. See id. However, improper motives should not easily be attributed to a town or to its citizens voting to take land by eminent domain at a town meeting as long as a valid reason supports the town’s action. See Pheasant Ridge Associates Limited Partnership, supra at 777, citing Sturges v. Chilmark, 380 Mass. 246, 257 (1980). This is true even if a taking benefits private citizens. Id. The serious public safety issues affecting the residents of James Lane is a valid reason that supports the Board of Selectmen’s actions in taking Eleazer’s Lane even if those same residents are somehow indirectly benefitted by the taking. Further, the Fitzpatricks are not disadvantaged by the taking because their main driveway, located on Pleasant Street, allows them easy access to their property. This court finds that there were no bad-faith motives leading the Board of Selectmen to vote for the taking and discontinuance of Eleazer’s Lane.
THE FITZPATRICKS’ INTEREST IN ELEAZER’S LANE
Where, as here, ownership of land taken by eminent domain is in dispute, the parties claiming damages have the burden of proving that they owned the land at the time of the taking. See Senn v. Western Massachusetts Electric Company, 18 Mass.App.Ct. 992, 994 (1984), citing Iris v. Hingham, 303 Mass. 401, 404 (1939). The evidence presented by the plaintiffs at trial was insufficient to prove ownership of Eleazer’s Lane.[3] Therefore, the Fitzpatricks have failed to satisfy their burden of proving ownership at the time of the Town of Cohasset’s taking and discontinuance of Eleazer’s Lane. As a result, they are not entitled to damages as previous owners in fee of Eleazer’s Lane.
ORDER
For the foregoing reasons, it is hereby ORDERED that judgment shall enter for the defendants.

 The Fitzpatricks did not argue that they had any other ownership rights in Eleazer’s Lane that would entitle them to damages. Further, they do not have the right to use Eleazer’s Lane because the taking by the Town of Cohasset was followed by a legal discontinuance. A formal legal discontinuance by town vote extinguishes the right of the public and abutting landowners to travel over a road. See Nylander v. Potter, 423 Mass. 158, 161 & fn. 7 (1996), citing Coombs v. Selectmen of Deerfield, 26 Mass.App.Ct. 379, 381 (1988).