20                    49 Mass. App. Ct. 20 (2000)

Spinnaker Island & Yacht Club Holding Trust *v.* Board of Assessors of Hull.

SPINNAKER ISLAND & YACHT CLUB HOLDING TRUST *vs.*
BOARD OF ASSESSORS OF HULL.

No. 98-P-800.

Suffolk. November 16, 1999. - March 23, 2000.

Present: ARMSTRONG, KASS, & RAPOZA, JJ.

*Condominiums,* Development rights, Common area. *Taxation,* Real estate tax: assessment. *Municipal Corporations,* Condominiums. *Real Property,* Condominium. *Statute,* Construction.

Where reserved expansion parcels of a condominium development constituted part of the common area of the condominium, the parcels were not subject to real estate taxation by virtue of the exclusion set forth in G. L. c. 183A, § 14. [22-24]

APPEAL from a decision of the Appellate Tax Board.

*Brian P. Mansfield* for the defendant.

*Seth H. Emmer* (*William DeBear* with him) for the plaintiff.

KASS, J. This is the first of two cases that consider whether municipalities may tax rights retained by the declarant of a condominium (developer) to build additional phases of the condominium.[1] Here, the assessors of Hull assessed real estate taxes to Spinnaker Island and Yacht Club Holding Trust (taxpayer) for fiscal tax years 1996 and 1997, as owner of ten parcels of land (expansion parcels) on Spinnaker Island.[2] The Appellate Tax Board (board), after proceedings under its formal procedure,[3] decided that the expansion parcels were part of the condominium's common area as defined by G. L. c. 183A,

---

[1]The second case, *First Main St. Corp.* v. *Assessors of Acton,* is reported *post* 25 (2000).

[2]Before the developer made it the site of a condominium, Spinnaker Island was known as Hog Island, a less tony address. The developer made a sail out of a hog's ear.

[3]Compare G. L. c. 58A, § 7 (formal procedure), with G. L. c. 58A, § 7A (authorizing informal procedure).

§ 1, and as such, were exempt under G. L. c. 183A, § 14, from assessment as separate parcels of real estate.

1. *Facts.* By master deed dated January 16, 1985, and recorded with the Plymouth Registry of Deeds, the developer[4] submitted all of Spinnaker Island to the provisions of G. L. c. 183A, the condominium enabling law. See G. L. c. 183A, § 2. The master deed described a condominium consisting of twenty-two units in ten buildings. That was to be Phase I of the condominium.

Under § 6 of the master deed, the declarant reserved the right, at its sole option, to increase the size of the condominium in phases, to a limit of 103 units.[5] Section 7 of the master deed, captioned "phasing lease," speaks of a lease of the land — on which the additional phases are to be built — that the declarant has "entered into," although it neglects to say with whom or how long the lease shall run. Whenever the declarant built an additional phase, the lease automatically terminated as to the land incorporated in the new phase of the condominium. There is no evidence that any "phasing lease" was ever executed and, as we shall see, there is some evidence that it never was. Details of the developer's option to add to the condominium are further set out in § 14 of the master deed, dealing with amendments to that document. Among the limitations that appear in § 14 is that the developer's right to increase the size of the condominium by building additional units expires January 1, 2004.

In 1985, the declarant added twenty-five units to the condominium; in 1986, thirty-three units; and in 1988, four units. There were then eighty-four units in the condominium. For five years the condominium did not grow further; the real estate boom of the late 1980's had run out of steam. On January 20, 1994, the developer[6] assigned all residual development rights to the taxpayer, a nominee trust of which the sole beneficiary was the condominium unit owners' organization (see G. L. c. 183A, § 10), Spinnaker Island and Yacht Club Associa-

---

[4]The declarants of the condominium were Paul R. Townsend, Francine F. Townsend, Mary N. Fazio, trustees of The Sandcastle Associates Trust.

[5]For a collection of authorities concerning the legitimacy of phased condominiums, a "mutation[] which creative real estate lawyers have contrived," *Barclay* v. *DeVeau*, 11 Mass. App. Ct. 236, 247 (Greaney, J., dissenting), *S.C.*, 384 Mass. 676 (1981), see *DiBiase Corp.* v. *Jacobowitz*, 43 Mass. App. Ct. 361, 364 n.5 (1997), *S.C.*, 427 Mass. 1004 (1998).

[6]Through a series of assignments, the development rights had devolved upon Spinnaker Island, Inc.

tion. That instrument of assignment, which bore the caption, "Quitclaim Deed," refers to the phasing lease "to the extent such Phasing Lease is existent," thereby reinforcing doubt that a phasing lease was ever drafted, let alone signed.[7] Six months later, on June 15, 1994, the taxpayer executed and recorded a document by which it relinquished development rights in eight parcels of Spinnaker Island, but retained rights in ten. Those ten parcels make up the expansion parcels that the town has undertaken to tax. At the time the taxpayer reduced its development rights to ten parcels, the unit owners amended the by-laws of their condominium association to provide that the management board of the association could authorize the addition of units to the condominium only with the consent of the holders of at least sixty-seven percent of the beneficial interests in the unit owners' association.

2. *Discussion.* The theory on which the assessors in this case claim to be able to tax the development rights owned by the taxpayer is that those rights were real property. See G. L. c. 59, § 2A(a).[8] As the assessors see it, the rights appurtenant to the expansion parcels separated them from the common area of the condominium. In view of the real estate labels used by the developer in dealing with the retained development rights, one may imagine why the assessors were tempted to regard those rights as taxable real property. First there was the phasing lease, and second there was the instrument of assignment of development rights to the taxpayer, which was cast in the form of a quitclaim deed and was expressly so captioned.[9] Labels, however, may not camouflage the underlying reality. See *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 292 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972); *American Trucking Assn.* v. *Secretary of Admn.*, 415 Mass. 337, 342 n.9 (1993); *Tinkham* v. *Department of Pub. Welfare*, 11 Mass. App. Ct. 505, 512 (1981); *Cumberland Farms,*

---

[7]The Appellate Tax Board remarked in its decision that the assessors had "failed to prove the existence, let alone the terms, of the phasing lease." No phasing lease was offered in evidence.

[8]For a different basis for taxing retained development rights to build future phases of a condominium, see *First Main St. Corp.* v. *Assessors of Acton, post* at 26-27.

[9]The document conveyed other interests, such as easements and building foundations, for which the quitclaim deed form may have been apt.

*Inc.* v. *Montague Economic Dev. & Ind. Corp.*, 38 Mass. App. Ct. 615, 621 (1995).

General Laws c. 59, § 2A(*a*), as appearing in St. 1979, c. 797, § 11, provides that "[r]eal property for the purpose of taxation shall include all land within the commonwealth and all buildings and other things thereon or affixed thereto . . . ." By the terms of § 1 and schedule A of the master deed, all the land of the island is submitted to the condominium. Under G. L. c. 183A, § 1, the declarant of the condominium could have done no less, as that statute defines "common areas and facilities" of the condominium as including the land on which the condominium buildings are located. We read the statute as referring to the land dedicated to the condominium rather than the footprint of a particular building. Section 4 of the master deed confirms that the common areas and facilities of the condominium shall include "all areas and facilities of the [c]ondominium as are not within a unit of the [c]ondominium."

Once it is recognized that the expansion parcels constitute common area of the condominium, it follows that they are not subject to real estate taxation because G. L. c. 183A, § 14, as appearing in St. 1963, c. 493, § 1, provides that "common areas and facilities . . . shall not be deemed to be a taxable parcel." This does not mean that the land of a condominium escapes taxation. "Each unit and its interest in the common areas and facilities shall be considered an individual parcel of real estate for the assessment and collection of real estate taxes." *Ibid.* That is, the assessors may factor common areas and facilities into the value of an individual condominium unit to be taxed but may not tax them separately. If retained condominium development rights are to be taxed, as we shall discuss more fully in the *First Main St. Corp.* case, *post* at 29-30, the Legislature shall have to act.

As to the phasing lease, apart from its peculiarly ephemeral quality, even had it existed, the arrangement as described did not purport to give possession to another but was a reservation of right to use common land for additional condominium units, the land under which would continue to be common area. See *DiBiase Corp.* v. *Jacobowitz*, 43 Mass. App. Ct. 361, 364-366 (1997), *S.C.*, 427 Mass. 1004 (1998).

Two cases that stand for the proposition that the statute does not preclude establishing nonownership interests in condominium land are not of assistance to the assessors. *Commercial*

*Wharf E. Condominium Assn.* v. *Waterfront Parking Corp.*, 407 Mass. 123, 125 (1990), involved retention by the developer of an easement in a driveway and parking area before declaration of the condominium, i.e., the real estate was withheld from the common area. Similarly, in *Beaconsfield Towne House Condominium Trust* v. *Zussman*, 416 Mass. 505, 506-508 (1993), a 155-year lease (of twelve parking spaces) executed and recorded prior to the master deed excluded the parking spaces concerned from the common areas and facilities of the condominium. In the instant case, there has been no exclusion of land from the common areas.

By reason of the unambiguous exclusion in G. L. c. 183A, § 14, of common areas from taxation except to condominium unit owners in proportion to their percentage interests, the expansion parcels are not subject, as separate parcels, to real estate taxation. The decision of the Appellate Tax Board is affirmed.

*So ordered.*