Henry, Bruce R., J.
INTRODUCTION
This action for review of an administrative decision arises out of a decision by the Board of Health for the Town of Douglas (“Board”) to grant a variance to permit Louis Tusino (Tusino”) to construct and install a sewage system on property owned by him. The plaintiff is an abutter of Tusino’s property, and has a water source which lies sixty-two feet from the proposed situs where Tusino plans to place the system. The plaintiff seeks review by certiorari of the Board’s grant of the variance under G.L.c. 249, §4 and has filed a Motion for Judgment on the Pleadings pursuant to Mass.R.Civ.P. 12(c). Tusino has filed an opposition, which the Board joins. The Court held a non-evidentiaiy hearing on the motion on May 1, 2006. For the following reasons, the plaintiffs Motion for Judgment on the Pleadings is ALLOWED.

BACKGROUND

The following facts are those which are relevant and established by the administrative record. Tusino owns a lot of land at 103 Shore Road in Douglas, Massachusetts (the “subject property”). Tusino purchased the subject property in 1989 from Louise Beauregard. In 1990, Tusino applied to the Board for a variance which would allow him to construct and install a new sewage disposal system on the subject property. The Board denied the request, stating that it would not grant the variance for new construction. Tusino applied again for a variance in 1996; the Board again denied the request on the ground that it “does not allow variances of this type on new construction sites.” October 16, 1997 Letter.
On June 6, 2005, the Tax Assessor’s Office of the Town of Douglas forwarded records to the Board indicating that from fiscal years 1987 through 1989, the subject property was assessed to Louise Beauregard for land and an outbuilding, and that in 1990 the land was assessed to Louise Beauregard for land only. The property was then assessed to Tusino in 1991 for land only. Based on this information, Tusino requested that the Board acknowledge that at one time a crude septic system, such as a privy or outhouse, had been located on the subject property. The Board discussed this issue at its regular, public meeting on August 15, 2005. There is no indication that the abutters of the subject property received notice of this meeting, nor did they appear at the meeting. The minutes reflect that at that meeting, Tusino stated that after purchase in 1989, he and his commercial real estate company removed a trailer and filled in the cesspool or privy that had been at the site. The Board then voted unanimously that Tusino’s proposal for the subject property would be considered repair or upgrade as opposed to new construction, based on Tusino’s statements and the information from the Tax Assessor’s Office.
Tusino subsequently filed a third application for a disposal system construction permit. This time, the project was called a repair rather than a new installation. The construction proposal requires a variance as it does not conform with the requirements of 310 Code Mass. Regs. §15.211, entitled “Minimum Setback Distances.” The Board set the matter down for discussion at its public hearing on October 3, 2005. Tusino sent notice to Joseph Bylinski (“Bylinski”), Carol Bylinski, and Mary Lee Speroni — the abutters of the subject property — regarding the meeting. The notices stated that Tusino was proposing construction of a soil absorption system that required a variance under 310 Code Mass. Regs. §15.211.[2] The notices also stated the Board had scheduled a public hearing on the variance and announced the date, time, and location of the meeting.
The minutes from that meeting reflect that Carol Bylinski and her attorney were present. They stated to the Board that there had never been a house or privy on the subject property and that Tusino’s proposed construction should not be considered a “repair.” Despite these representations, the Board approved Tusino’s request for a variance by a majority vote.[3]
Bylinski subsequently filed the instant lawsuit challenging the Board’s decision and seeking certiorari review under G.L.c. 249, §4. The plaintiff alleges that the Board’s decision was based upon a substantial error of law, was unsupported by the facts in the record, was arbitrary and capricious, and was not based on substantial evidence. On April 12, 2006, Bylinski filed a Motion for Judgment on the Pleadings, *74 asking the court to quash the Board’s proceedings on those grounds and to set aside the variance.

DISCUSSION

Standard of Review

G.L.c. 249, §4 provides for review of civil actions by certiorari in the Superior Court “to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal.” Certiorari is available where there exists “(1) a judicial or quasi judicial proceeding; (2) a lack of all other reasonably adequate remedies; and (3) a substantial injury or injustice arising from the proceeding under review.” Boston Edison Co. v. Selectmen of Concord, 355 Mass. 79, 83 (1968). A proceeding is quasi-judicial when it determines individual rights or interests, as opposed to political or legislative matters. See e.g., Cumberland Farms v. Montague Econ. Dev. & Indus., 38 Mass.App.Ct. 615, 621 (1995), citing Warren v. Hazardous Waste Facility Site Safety Council, 392 Mass. 107, 117 (1984).
After certiorari review, the court may affirm or quash the proceedings below, or enter “such other judgment as justice may require.” G.L.c. 249, §4; see e.g., Bermant v. Bd. of Selectmen of Belchertown, 425 Mass. 400, 401 (1997). The standard for certiorari review in the Superior Court varies by the nature of the action under review. Forsyth Sch. for Dental Hygienists v. Bd. of Registration in Dentistry, 404 Mass. 211, 217 (1989). Generally, certiorari review is “limited to correcting substantial errors of law that affect material rights and are apparent on the record.” Gloucester v. Civil Serv. Comm’n., 408 Mass. 292, 297 (1990) (quotation marks and citations omitted).
The court may consider whether the administrative body’s decision was “legally tenable and supported by substantial evidence on the record as a whole.” Comm, of Health and Hosps. of Boston v. Civil Serv. Comm’n., 23 Mass.App.Ct 410, 411 (1987). When a decision is based on factual findings, the court may properly consider whether the administrative decision was based on substantial evidence, although the court may not find facts. Durbin v. Bd., Selectmen. Kingston, 62 Mass.App.Ct. 1, 5-6 (2004), citingBiélawski v. Pers. Admin, of the Div. of Pers. Adran., 422 Mass. 459, 464 (1996). Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” RCN-BECOCOM, LLP v. Cornm’r of Revenue, 443 Mass. 198, 204 (2005); New Boston Garden Corp. v. Bd. of Assessors of Boston, 383 Mass. 456, 466 (1981). In considering whether substantial evidence supports the facts found, the court must examine the entire record and take into account whatever fairly detracts from the weight of the conclusion reached. Doherty v. Ret. Bd. of Medford, 425 Mass. 130, 131 (1997).

Definitions

An understanding of the regulatory definitions of the following terms is necessary to the discussion of the action below. 310 Code Mass. Regs. §15.002 (310 Code Mass. Regs. §15.000 et seq., hereinafter referred to as “Title V”) defines the following relevant terms:
“failed system” — A system which fails to protect public health and safety or the environment.
“non-conforming system” — Any system which is not in full compliance with the standards and requirements of Title V and for which a variance or local upgrade approval has not been obtained. Nonconforming systems include, but are not limited to, cesspools, privies, failed systems, and systems with a design flow above 10,000 gpd.
“design flow” — The quantity of sanitary sewage, expressed in gallons per day (gpd), for which a system must be designed.
“upgrade” — The modification of one or more components of an on-site system or the design and construction of a new on-site system which is intended to bring a nonconforming system into conformance with Title V.
“local upgrade approval” — An approval granted by the local approving authority allowing the owner or operator of a nonconforming system to perform an upgrade of the nonconforming system to the maximum feasible extent.
“new construction” — The construction of a new building for which an occupancy permit is required or an increase in the actual or design flow to any nonconforming system or to any other system above the existing approved capacity. New construction shall not include replacement or repair of an existing building totally or partially destroyed or demolished if there is no increase in flow or no increase in flow above the existing approved capacity to any system.
“privy” — A structure used for the disposal of human wastes without water transport consisting of a shelter built over an unlined pit or vault in the ground into which waste is deposited. A privy is a nonconforming system.
“cesspool” — A pit with open-jointed linings or holes in the bottom and/or sidewalls into which raw sewage is discharged, the liquid portion of the sewage being disposed of by seeping or leaching into the surrounding soils, and the solids or sludge being retained in the pit. Cesspools are nonconforming systems.
310 Code Mass. Regs. §15.002.

Certiorari Jurisdiction

Certiorari review is appropriate in this situation. There has been a quasi-judicial proceeding, namely Tusino’s application for local upgrade approval and the subsequent public hearing and administrative *75 decision reached thereon which has affected the individual rights of the plaintiff. There is no other remedy available because the Department of Environmental Protection (“DEP”) does not review variances granted for the setback requirements of Title V under 310 Code Mass. Regs. §15.211. A substantial injury or injustice is claimed by the plaintiff as a result of the decision below, specifically that the plaintiffs right to clean drinking water protected by statute and regulation is in danger because of the decision. Because these three elements are present, certiorari review is available. See Boston Edison Co., 355 Mass, at 83. The Board’s decision rested on factual findings, e.g., the existence of a privy and its state after having been previously filled in, and the Board is limited to applying the standards in the regulations and does not have free discretion to allow variances. Therefore, the proper level of review is whether the decision is legally tenable and supported by substantial evidence rather than an arbitrary and capricious abuse of discretion. See Comm, of Health and Hosps. of Boston, 23 Mass.App.Ct. at 411; Durbin, 62 Mass.App.Ct. at 5-6.

Title V Requirements

Title V requires that all soil absorption systems, such as what Tusino proposes to install, must lay at least 100 feet from the nearest private water supply. 310 Code Mass. Regs. §15.211. Local approving authorities and the DEP may grant variances from Title V requirements only if the approving authority determines that enforcement of Title Vs provisions would be “manifestly unjust” and that the person requesting the variance has established a level of environmental protection that is equal to that imposed by Title V. 310 Code Mass. Regs. §15.410 (1). To grant a variance for new construction, “enforcement of the provision from which a variance is sought must be shown to deprive the applicant of substantially all beneficial use of the subject property in order to be manifestly unjust.” 310 Code Mass. Regs. §15.410(2) (emphasis added). Generally, DEP reviews each variance that is granted by local authorities under these regulations, but no DEP review is required of variances granted for the setback requirements of 310 Code Mass. Regs. §15.211. 310 Code Mass. Regs. §15.412(4)(a).
An owner may upgrade a failed or non-conforming system by seeking approval from the appropriate approving authority, which is either a local authority or the DEP, depending on the design flow gpd of the system. 310 Code Mass. Regs. §15.403(1). But, “Local Upgrade approvals shall not be granted for upgrade proposals which include the addition of new design flows to a cesspool or privy or for the addition of new design flows above the existing approved capacity of a system!.]” 310 Code Mass. Regs. §15.403(2). Furthermore,
[w]henever the use of a system is discontinued . . . following condemnation or demolition of a building served by the system, the system shall be considered abandoned and any further use of the system for any purpose shall be prohibited unless, after inspection, the approving authority determines the system is in compliance or can be brought into compliance with [Title V].
310 Code Mass. Regs. §15.354(1).

The Board’s Proceedings

The Board’s decision is unsupported by substantial evidence and based upon an error of law.
The Board’s determination that Tusino’s proposal is an upgrade or repair rather than new construction is unsupported by substantial evidence and in conflict with the clear language of the Code of Massachusetts Regulations; furthermore, the findings that the Board was required to make in order to grant a variance are not supported by substantial evidence in the administrative record. The decision is therefore in error and must be quashed.
The Board granted Tusino’s request for a variance after determining that Tusino’s proposed construction was a repair or upgrade, rather than new construction. The Board found that Tusino’s proposal is a repair or upgrade because it determined that some sort of privy or cesspool had previously existed on the subject property.[4] The Board further found that the privy or cesspool had been filled in about 1990. Between Tusino’s statements and the Tax Assessor’s records, there is sufficient evidence to warrant both of those conclusions. By definition of Title V, whichever ‘system’ was on the subject property, it was anon-conforming system. See 310 Code Mass. Regs. §15.002.
To be considered a repair or upgrade, the proposed construction may not increase the actual or design flow of the non-conforming system. 310 Code Mass. Regs. §15.002. If the result is an increase in actual or design flow of the existing system, the regulations clearly categorize such construction as new. Id. There is nothing in the record to indicate what the design flow or actual capacity was of the privy prior to its being filled in. There are also no findings with regard to the privy’s current actual flow or capacity. Regardless of what its actual or design flow was in 1989, because the hole has been filled in, the privy’s current actual flow is zero. Whatever proposal Tusino has made will increase the actual flow and likely the actual capacity of the system; it is therefore new construction by definition of Title V. 310 Code Mass. Regs. §15.002. The Board’s finding that Tusino’s proposal constitutes an upgrade or repair rather than new construction is unsupported by the evidence, as there is not enough evidence to conclude that the new system will not increase the actual or design flow of the old system. On the contrary, the Board’s findings suggest that Tusino’s proposal will likely increase the actual flow of the system’s current capacity and the conclusion that the proposal is an upgrade or repair is therefore an error law as it misinterprets and misapplies the *76 definitions listed in Title V. See 310 Code Mass. Regs. §15.002.
If Tusino’s proposal is in fact new construction, the Board was required under Title V to find that “enforcement of the provision from which a variance is sought must be shown to deprive the applicant of substantially all beneficial use of the subject property in order to be manifestly unjust” before granting the variance. 310 Code Mass. Regs. §15.410(2) (emphasis added). The Board did not make such a finding; there is no indication in the record that the Board even considered this question. The facts in the record do not suggest that enforcement of the variance will cause Tusino to lose all economic value or beneficial use of the property. The Board’s grant of the requested variance is therefore not in accordance with the requirements of Title V, constitutes an error of law, and must be quashed.
Even if Tusino’s proposal could appropriately be categorized as a repair or upgrade rather than new construction and properly subject of a local upgrade approval, the Board’s decision would still be in error for two reasons. First, to grant any variance, regardless of whether the variance is for a local upgrade approval or new construction, the approving authority must find that enforcement of Title Ms provisions would be “manifestly unjust” and that the person requesting the variance has established a level of environmental protection that is equal to that imposed by Title V. 310 Code Mass. Regs. §15.410(1). Again, the Board did not detail its consideration of these requirements or findings with regard thereto on the record.[5] There is additionally no evidence in the record that suggests that Tusino has established a level of environmental protection equal to that imposed by Title V, or that enforcement of the provision will be manifestly unjust to Tusino.
Second, Title V specifically states that local upgrade approvals may not be issued for upgrade proposals which “include the addition of new design flows to a cesspool or privy or for the addition of new design flows above the existing approved capacity of a system.” 310 Code Mass. Regs. §15.403(2). The purpose ofTusino’s proposal is to include the addition of a new design flow to the cesspool or privy on the subject property; it is therefore exempt from local upgrade approvals under Title V. Furthermore, if Tusino’s proposal results in new design flows above the existing approved capacity of a system, it may not be the subject of a local upgrade approval; because the Board made no findings with regard to the existing approved capacity of the system, there is not sufficient evidence to conclude that Tusino’s proposal will not result in new design flows above the existing approved capacity of a system. For these reasons, the Board’s decision is both unsupported by substantial evidence and an error of law and must be quashed. On all the bases above, the Board’s decision is arbitrary and capricious because elements of it are based on facts unsupported by substantial evidence in the administrative record. See Doherty, 425 Mass, at 135.

Plaintiff’s Additional Claims

The plaintiff raises an argument that the privy on the subject property was abandoned and therefore it cannot be used until it is inspected and approved. Although Title V does place that imposition on abandoned systems, it also lays out a very specific process to go through to abandon a system. See 310 Code Mass. Regs. §15.354. While Tusino’s actions in filling the privy in correspond to the lay understanding of abandoning it, there is no evidence in the record suggesting, nor did the Board find, that Tusino went through the process defined in Title V to abandon the system. Accordingly, this argument is unpersuasive. Similarly unpersuasive is the plaintiffs argument that Tusino’s proposal must be considered new construction because it requires an occupancy permit. Although the definition of new construction does include a building which requires an occupancy permit, 310 Code Mass. Regs. §15.002, there is again not enough evidence in the record to conclude, nor did the Board find, that Tusino is building a structure which requires an occupancy permit.
The plaintiffs claim that the Board’s proceedings should be quashed because of insufficient notice is also of no avail. The plaintiffs wife was present at the meeting for the vote on the variance and was represented by counsel at that meeting. The plaintiff himself signed for receipt of the notice to him. These facts clearly show that even if notice was technically impaired, the abutters had sufficient notice to show up at the meeting to protest the variance. The notification included the specific provision from which Tusino is seeking relief, as well as the date, time, and place of the meeting scheduled for discussion of Tusino’s application. All that is lacking from Tusino’s notice to the plaintiff is that statement of the Title M standards under which a variance may be granted. See 310 Code Mass. Regs. § 15.41 1(1)(b). The plaintiff cites no authority that requires the Board’s proceedings to be quashed because of this single deficiency. The plaintiff had notice of the date, time, place, and subject of the variance request discussion; presumably, having been represented by counsel, the plaintiff and his wife would have known through their lawyer what the Title M standard for granting a variance is prior to the meeting. It is therefore unnecessary to quash the Board’s proceedings on this ground.

ORDER

For the foregoing reasons, the plaintiffs Motion for Judgment on the Pleadings is ALLOWED. It is therefore ORDERED that judgment shall enter vacating the decision by the Board of Health for the Town of Douglas dated October 5, 2005, which granted variances from Title M of the State Sanitary Code.

Nhe regulations require that septic systems be 100 feet from drinking water supplies, but Tusino’s proposed construction is only 62 feet from the drinking water supplies of the abutting property owned by the plaintiff, and 94 feet from the drinking water supplies of the abutters on the other side of the subject properly.

The Board did impose stipulations upon its approval of the variance, namely that Tusino was required to test the drinking water supplies of the two abutters’ properties for coliform bacteria prior to beginning construction of the new septic system and annually thereafter, that Tusino was required to pay for the testing, that the test results were to be submitted regularly to the Board, and that the testing requirements must be placed on the deed for the subject property.

Both parties go to considerable lengths discussing the difference between privy and cesspool, but it is not relevant to the discussion at hand because both are non-conforming systems. All that is important here is that there was some pit for disposal of human waste on the property, that it was a non-conforming system, and that it was filled in.

The plaintiff argues that the Board should have recorded the bases for its finding in writing: Tusino counters that the Board did not need to state any reason for granting a variance. Title V does not specifically require approving bodies to state on the record their reasons for allowing a variance or their findings with regard to the Title V standards for granting one: Title V does require the Board to make certain findings and, if granting a variance, issue its approval in writing. These requirements seem to suggest that the Board is expected to issue findings in writing. As neither the regulations require it, nor does any other authority, it is not proper for this court to require written findings. Because Title V requires that a variance may only be granted after a showing of manifest injustice and adequate alternative environmental protection, the court should assume that the Board made such findings. As with other aspects of the Board’s decision, those findings must be supported by substantial evidence in the record.